The CITY OF DALLAS, Texas, et al., Appellants,

v.

MD II ENTERTAINMENT, INC., d/b/a The Fare West, and Duncan Burch, Appellees.

No. 05–96–00794–CV

Court of Appeals of Texas, Dallas.

July 24, 1998.

Walter C. Davis, Asst. City Atty., Dallas, for Appellant.

Charles J. Quaid, Dallas, for Appellee.

Before MORRIS, BRIDGES and ROACH, JJ.

## OPINION

MORRIS, Justice.

The question presented in this case is whether a City of Dallas ordinance permitting the police chief to suspend a business license is unconstitutional. The trial court concluded the ordinance in question, Dallas City Code section 14–10(6), is unconstitutionally vague and, as such, violates appellees' right to due process of law. We conclude the trial court's ruling is correct. We hold that Dallas City Code section 14–10(6) is unconstitutional.

### I.

The Fare West is a dance hall featuring live "strip tease" shows. It is operated by MD II Entertainment, Inc. As a dance hall, The Fare West is subject to certain regulations and licensing requirements found in chapter 14 of the Dallas City Code.

By letter dated April 11, 1995, the Dallas chief of police informed Duncan Burch, president of MD II, that The Fare West's dance hall license was suspended for five days. The sole reason given was that The Fare West had violated section 14–10(6) of the Dallas City Code. At the time of the suspension, section 14–10(6) read as follows:

> The chief of police shall suspend a dance hall license for a period of time not exceeding 30 days if the chief of police determines that a licensee or an employee of a licensee has:
>
> \* \* \*
>
> (6) demonstrated inability to operate or manage a dance hall premises in a peaceful and law abiding manner, thus

necessitating action by law enforcement officers....

After receiving notice of the suspension, appellees appealed to the City's Permit and License Appeal Board. The Board upheld the suspension but reduced the period of suspension to two days. Appellees then filed suit in district court against the City of Dallas, the Board, and the Dallas chief of police seeking injunctive and declaratory relief. The trial court granted appellees relief by, among other things, declaring that section 14–10(6) of the Dallas City Code "is unconstitutional, vague and overbroad, denying [appellees] and other parties similarly situated due process of law." Once the trial court's judgment became final, this appeal ensued. Appellants challenge the trial court's conclusion that section 14–10(6) violates the constitutional protections of due process. In discussing this challenge, we refer to appellants collectively as "the City."

## II.

The City challenges the trial court's conclusion that section 14–10(6) violates the constitutional protections of due process. It argues simply that section 14–10(6) is clear in its meaning and constitutional in its enforcement. In doing so, it relies on the decision of *Dumas v. City of Dallas*, 648 F.Supp. 1061 (N.D.Tex.1986), and the later Fifth Circuit opinion affirming it, *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298 (5th Cir.1988), *aff'd in part and vacated in part*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).[1]

■ In *Dumas*, the federal district court reviewed the constitutionality of Dallas city ordinances regulating sexually oriented businesses. The court applied the four-part test set out in *United States v. O'Brien*, 391 U.S.

367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), to determine whether the ordinances were overbroad or were otherwise justified despite the fact they had an incidental effect on free expression. *Dumas*, 648 F.Supp. at 1069. To pass the *O'Brien* test, a regulation must (1) be within the constitutional power of the government, (2) further an important or substantial governmental interest, (3) be unrelated to the suppression of free expression, and (4) be no greater than essential to the furtherance of the governmental interest if the regulation incidentally restricts freedom of expression. *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673. The court in *Dumas* concluded the ordinances satisfied the first three elements of the test, but that four particular sections failed to meet the fourth element. *Dumas*, 648 F.Supp. at 1069, 1077.

One of the sections found unconstitutional in *Dumas* dealt with issuing licenses. That section contained much of the same language at issue in the case before us. It required the police chief to deny a license to a sexually oriented business on a finding that the applicant is "unable to operate or manage a sexually oriented business premises in a peaceful and law-abiding manner." *Id.* at 1072. The court determined this language was not susceptible to objective measurement and, therefore, vested the police chief with unconstitutionally broad and unfettered discretion to deny a license. *Id.* at 1072–73. Such unfettered discretion was greater than necessary to further the government's interest and posed an unreasonable risk that conduct protected by the First Amendment would be restricted.

In a footnote to the opinion, the court wrote that the "infirmity" suffered by the section was not repeated in a similar section

---

1. Appellees' constitutional challenge to section 14–10(6) was brought under the due course of law and freedom of expression provisions of the Texas Constitution. *See* TEX. CONST. art I, §§ 8, 19. The trial court concluded that section 14–10(6) denied appellees only "due process of law," not freedom of expression. Accordingly, our analysis focuses solely on whether the regulation denied appellees due process. In their briefs, both sides rely heavily on federal case law interpreting the protections provided by the United States Constitution. The federal constitution sets the minimum protections a state must afford its citizens. *See Davenport v. Garcia*, 834 S.W.2d 4, 15 (Tex.1992). A state constitution can add to, but not subtract from, the rights guaranteed by the federal constitution. *See id.* As a result, any violation of federal due process protections must also violate a state's constitutional guarantees of due process. Because we ultimately conclude that section 14–10(6) fails to meet the minimum level of protection mandated by the United States Constitution and, therefore, necessarily violates the minimum protections provided by the Texas Constitution, we need not to look to any additional protections provided in our state.

relating to license suspension. The license suspension section used the same language as the license issuance section but added the phrase "thus necessitating action by law enforcement officers." *Id.* at 1072 n. 29. The court stated in its footnote that the added language limited the potential applicability of the ordinance by requiring objective indications of an inability to operate a sexually oriented business in a peaceful manner. *Id.* In affirming the opinion, the Fifth Circuit Court of Appeals wrote generally that the ordinance sections upheld by the district court did not give the chief of police impermissibly broad discretion in the issuing, suspending, and revoking of licenses. *FW/PBS,* 837 F.2d at 1305.

The City relies heavily on *Dumas* and *FW/PBS.* In effect, it argues that the issue of whether the language of section 14–10(6) violates due process has already been decided by these cases. The City's reliance on these cases, however, is misplaced.

The issue in *Dumas* was not whether the language of the section violated due process, but whether the language was overbroad to the extent it permitted unnecessary infringements on protected First Amendment freedoms. *Dumas,* 648 F.Supp. at 1069–70. Because the phrase "inability to operate or manage a sexually oriented business in a peaceful and law-abiding manner," standing alone, did not provide objective guidelines for enforcing the ordinance, the section permitted the chief of police to deny licenses possibly based on an applicant's exercise of First Amendment protected rights. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The addition of the language "thus necessitating action by law enforcement officers" arguably restricted the discretion of the chief of police to rendering licensing decisions based on demonstrably illegal, and therefore not constitutionally protected, conduct. The courts in *Dumas* and *FW/PBS* concluded, therefore, that the language of the suspension ordinance before them was not overbroad in the sense that its incidental restrictions on First Amendment freedoms were no greater than necessary to further the substantial governmental interest in regulating

sexually oriented businesses. *Dumas,* 648 F.Supp. at 1072, 1077.

■■■■ A regulation that does not reach constitutionally protected conduct or that reaches such conduct, but is nevertheless constitutional under the *O'Brien* test, may still be unduly vague and violate due process protections. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In contrast to the *O'Brien* test, the test to determine if a regulation is so vague as to violate due process is whether it (1) gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) provides explicit standards for those who apply it. *See Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The latter part of this test, like the fourth element of the *O'Brien* test, includes an examination of the breadth of discretion given to those charged with enforcing the regulation. Unlike the test for overbreadth, however, the vagueness test does not focus on whether those charged with enforcement are given such broad discretion that they may prohibit or punish the exercise of First Amendment freedoms. Rather, the test examines whether the regulation is so vaguely worded that enforcement officials are given overly broad discretion to apply the law in a discriminatory and arbitrary manner, thus encouraging erratic arrests and convictions. *See id.* at 108–09, 92 S.Ct. 2294; *see also Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). In deciding that the license suspension section at issue in *Dumas* met the fourth prong of *O'Brien,* the court did not decide the issue of whether the language was unconstitutionally vague.

■■■■ The City argues that section 14–10(6) is not vague because it clearly admonishes licensees that if they cannot control the activities on their premises, thus forcing the police to take action, their licenses may be suspended. The City's interpretation of the section is certainly a plausible one. But the City's interpretation does nothing to clarify the scope of the section's meaning. For example, may the acts or conduct of others, including patrons, result in a "demonstrated

inability" regardless of the licensee's efforts? What is "action by law enforcement officers?" Is it just responding to a call to come to the premises? Or must the "action" rise to the level of issuing a citation or, perhaps, even an arrest? If so, is one such "action by law enforcement officers" sufficient for the police chief to decide that a licensee has demonstrated an inability to "operate or manage" its business in a law abiding manner? Or does it take two or three or four? Is it possible for a licensee to demonstrate its "inability" in one day? What if a licensee asks for help from police to maintain the peace or prevent criminal activity? Does a licensee's legitimate call for help show a "demonstrated inability to operate or manage" the business in a peaceful and law abiding manner? The police have a statutory duty to maintain the peace and prevent crime. If *they* fail to do so in response to a licensee's request for help, is the licensee the one to suffer the consequences by having its license suspended?

Another court considering virtually the identical language involved here concluded that it provided no criteria to determine what kind of conduct would result in a license suspension. *See East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 227 (6th Cir.), *cert. denied,* 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 198 (1995). We conclude the same. The language of section 14–10(6) does not specifically, or even reasonably, inform licensees what conduct will make them subject to license suspension. *See Grayned,* 408 U.S. at 108, 92 S.Ct. 2294. In fact, even lawful and entirely proper conduct on a licensee's part, such as requesting police assistance, arguably can be the very basis for the police chief to decide to suspend the license. In the end, section 14–10(6) fails to provide specific standards to guide the chief of police in his application of the ordinance. The lack of guidance impermissibly grants the chief of police the ability to suspend licenses in an arbitrary and discriminatory manner, should he ever decide to do so. *See id.* at 108–09, 92 S.Ct. 2294. Section 14–10(6) fails the vagueness test.

Notwithstanding the City's plausible interpretation of the ordinance's language, the questions that arise from the language of the ordinance cannot be answered by a generalized construction of the section's meaning. Without clear meaning, the ordinance gives neither a fair warning to those who are expected to comply with it nor guidelines for its enforcement. We hold, therefore, that section 14–10(6) of the Dallas City Code is unconstitutional because of vagueness and that it violates the due process guarantees of the Texas Constitution.[2]

We overrule the City's sole point of error and affirm the trial court's judgment.