**Bernard ROSENBLATT, as applicant for AVW, Inc., d/b/a Adult Video Megaplexxx, Appellant,**

v.

**CITY OF HOUSTON, Appellee.**

No. 13–99–692–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 19, 2000.

Bradley Reich, Law Offices of Bradley J. Reich, Aurora, CO, Richard Alan Anderson, Dallas, Richard B. Kuniansky, Kuniansky & Karahan, Houston, for Appellant.

Michael Acuna, Houston, Patrick Zummo, Zummo, Mitchell & Perrys, Houston, Anthony W. Hall, City Atty., Houston, Gilbert D. Douglas, Houston, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Bernard Rosenblatt, as applicant for AVW, Inc. d/b/a Adult Video Megaplexxx, appellant, appeals from the granting of a motion for summary judgment. Appellant challenges the summary judgment by seven issues. We affirm.

Adult Video Megaplexxx (Megaplexxx) is an adult bookstore located in Houston,

Texas. It contains adult video arcades[1] where customers can enter booths to watch sexually explicit videos. In 1997, the City of Houston (the City) enacted Ordinance 97–75, which amended chapter 28 of its municipal code, having to do with sexually oriented businesses. Section 28–10, which is found in division 3 governing adult arcade and adult mini-theatre design, provides as follows:

> (a) If an adult arcade or adult mini-theatre has one (1) manager's station designated pursuant to section 28–92(c) of this Code, then *the interior of the adult arcade or adult mini-theatre shall be configured in such a manner that there is an unobstructed view of every area of the adult arcade or adult mini-theatre to which any patron is permitted access for any purpose from that manager's station.* If an adult arcade or adult mini-theatre has two (2) or more manager's stations designated pursuant to section 28–92(c) of this Code, then the interior of the adult arcade or adult mini-theatre shall be configured in such a manner that there is an unobstructed view of each area of the adult arcade or adult mini-theatre to which any patron is permitted access for any purpose from at least one (1) of the manager's stations. *The view required in this subsection must be by direct line of sight from the manager's station.*
>
> (b) It shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present in an adult arcade or adult mini-theatre, to ensure that the *view area specified in subsection (a) remains unobstructed by any merchandise, display racks or other materials at all times that any patron is present in the adult arcade or adult mini-*

---

**1.** "Adult arcades" are establishments containing "coin—or slug-operated or electronically or mechanically controlled machine[s] or device[s]" that dispense adult entertainment intended for viewing by five or fewer persons. HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–81.

*theatre* and to ensure that no patron is permitted access to any area of the adult arcade or adult mini-theatre which has been designated as an area in which patrons will not be permitted in the plan filed pursuant to section 28–92 of this Code.

HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–101(a) (emphasis added).

According to an affidavit of John Bratton, president of AVW, Inc., video cameras were installed in the arcade booths at Megaplexxx to comply with the "direct line of sight" provision of Ordinance 97–75. Bratton affied that "[t]he cameras in the arcades transmit a picture of the inside of the arcade to a monitor located in the manager's station. The video coverage is live, and simultaneously transmits a picture of the inside of each and every arcade, as well as the hallways." According to Bratton, "[p]atrons are advised in writing that their activities are being monitored by a video camera, and that Adult Video Megaplexxx does not permit lewd conduct of any kind."

According to an officer of the Houston Police Department, Vice Division, during an inspection of Megaplexxx, he observed there is not an unobstructed view of every area to which a patron is permitted access. He also observed there was not a direct line of sight from the manager's station and that the arcades have doors. Appellant does not contest that, without the use of video surveillance, there is no direct, unobstructed view from the manager's station to each area of the adult arcade or adult mini-theatre to which any patron is permitted access.

Appellant applied for an adult arcade/adult mini-theater permit with the City. The City denied the application by written letter on July 15, 1998. According to the letter, the City denied the permit because (1) "[the] adult arcade is in violation of Section 28–93(b)(1)[2] of the Adult Arcade/Adult Mini–Theater Ordinance having to do with the view design, and lighting requirements[,]" and (2) "the application … submitted is in violation of Section 28–92(c)."[3]

Appellant pursued an appeal as authorized by the ordinance. A hearing was held on the appeal on August 19, 1998, and the hearing officer[4] concluded by stating, "I'm going to hold that the denial of the permit was improper and then maybe [City] Council can straighten this out." On August 24, 1998, the City moved for the hearing officer to reconsider and uphold the denial of the permit. Appellant responded to the motion for reconsideration on August 26, 1998. On September 22, 1998, the hearing officer reversed his prior ruling and signed a decision affirming the denial of the permit. The decision states that the denial of the permit "was based upon violations of Section 28–101(a); Adult Video Megaplexxx Arcade's internal configuration does not permit an unobstructed view from the manager's station by direct line of sight of every area of the adult arcade to which patrons are permitted access." Thereafter, appellant appealed the hearing officer's decision to a district court in Harris County. Both parties moved for summary judgment. The court granted the City's motion for summary judgment without specifying the grounds on which it was rendered. This appeal ensued.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden (1) to establish as a matter of law that there re-

---

**2.** Section 28–93(b)(1) of the ordinance authorizes the denial of permits when adult arcades or adult mini-theatres do not comply with division 3 of the article. Division 3 includes sections 28–101 (view from the manager's station), 28–102 (wall penetrations), and 28–1023 (lighting).

**3.** Section 28–92(c) requires applicants to submit a diagram of the arcade or mini-theatre.

**4.** The hearing officer is an official who is appointed by the mayor and confirmed by the city council. HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–113.

mained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Pena v. State Farm Lloyds,* 980 S.W.2d 949, 953 (Tex.App.—Corpus Christi 1998, no pet.). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* In this case, the trial court granted summary judgment for the City; hence, we view all evidence favorable to appellant, the non-movant, as true and indulge every inference in its favor.

When there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was rendered, appellant must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 381 (Tex.1993). If the appellant fails to negate each ground on which the judgment may have been rendered, we must uphold the summary judgment. *Id.*

In its fourth and fifth issues, appellant avers the trial court erred in granting summary judgment because appellant was in full compliance with the ordinance as a matter of law, and there was a fact issue regarding whether appellant substantially complied with the ordinance.[5]

Appellant first maintains it complied with the direct line of sight provision of the ordinance by installing video cameras in the arcades. According to appellant, the video cameras afford the manager a direct line of sight inside the arcades. The City urges that the direct line of sight provision requires arcades to be visible from the manager's station without the use of a medium.

█ The rules that apply to the construction of statutes apply as well to the construction of municipal ordinances. *Wende v. The Board of Adjustment of the City of San Antonio,* 27 S.W.3d 162, 169–70 (Tex.App.—San Antonio 2000, no pet. h.) (citing *Mills v. Brown,* 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958)). The cardinal rule of statutory construction is to discern and give effect to the intent of the enacting body. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994). We must first seek to discern that intent from the plain language of the statute or ordinance. *Id.*

█ The ordinance provides that there must be an unobstructed view of every area of the adult arcade or adult mini-theatre to which any patron is permitted access from the manager's station and this view must be by direct line of sight. The Houston City Council did not define direct line of sight in the ordinance; thus we use the commonly understood, everyday definition of the word direct when interpreting the ordinance. Tex. Gov't Code Ann. § 311.011 (Vernon 1998). Black's Law Dictionary defines direct as "[i]mmediate; proximate; by the shortest course; *without circuity;* operating by an immediate connection or relation, *instead of operating through a medium;* the opposite of indirect." Black's Law Dictionary 315 (6th ed.1990) (emphasis added). Webster's Dictionary defines direct as "a proceeding from one point to another in time or space without any deviation or interruption … *marked by absence of an intervening agency,* instrumentality, or influence …" Webster's New Collegiate Dictionary 571 (1981 ed.) (emphasis added).

Using the rules of construction, we presume the city council chose the words "di-

---

**5.** Appellant also contends, alternatively, if appellant was not in substantial compliance with the ordinance, the ordinance infringed upon appellant's First Amendment rights because it was not narrowly tailored to protect the City's interest. For convenience, we shall address this argument after considering appellant's sixth and seventh issues.

rect line of sight" carefully and intended for them to have meaning and purpose. As provided in the ordinance, therefore, the use of video cameras within enclosed booths does not satisfy the direct line of sight requirement because it involves the use of a medium and intervening agency.

■■■■ Appellant responds that such an interpretation of direct is unreasonable, as it would result in a person from the manager's station not being able to use eyeglasses, which are arguably a medium, to view the arcades. We must avoid interpretations that would produce absurd results or render other language mere surplusage. *City of Amarillo v. Martin,* 971 S.W.2d 426, 430 (Tex.1998) We do not believe by requiring a direct line of sight, the council sought to prohibit the use of eyewear to improve the line of sight. Unlike video cameras and monitors, eyeglasses do not transmit images; rather, they refine images. We conclude that from the plain language of the ordinance, the council did not intend for enclosed arcades with video surveillance to satisfy the design requirements of section 28–101(a).

The legislative history in this case further supports this conclusion. When construing a statute or ordinance, whether or not the statute is ambiguous on its face, we consider such matters as the object sought to be attained by the statute, the circumstances involved, the legislative history, the common law, former provisions, and laws on the same or similar subjects. Tex. Gov't Code Ann. § 311.023 (Vernon 1998); *Castle v. Harris,* 960 S.W.2d 140, 143 (Tex. App.—Corpus Christi 1997, no pet.); *Grothues v. City of Helotes,* 928 S.W.2d 725, 728 (Tex.App.—San Antonio 1996, no writ).

Attached to the City's motion for summary judgment is a transcript of a meeting held by the City's Sexually Oriented Business Committee, during which the committee discussed proposed ordinance 97–75. According to an attorney making a presentation to the committee, the purpose of the ordinance was to provide an open and unobstructed view of the arcades, and to prevent illegal sexual activity. Although doors were not expressly prohibited in the ordinance, according to one council member, they were effectively prohibited by the requirement that there be an open view of every area where customers are permitted. Appellee also attached the minutes of the committee during which a draft ordinance was reviewed section by section. There, the attorney stated, "[t]he point of the Adult Arcade Ordinance is to eliminate the use of enclosed booths for viewing of such materials for places involving illegal or sexual conduct. . . ."

We conclude appellant did not fully comply with the ordinance by installing video cameras in booths that were not open and visible from the manager's station without the use of a medium.

■■■ Appellant contends, alternatively, that it substantially complied with the ordinance. Substantial compliance has been defined to mean performance of the essential requirements of a statute. *Stratton v. Austin Ind. Sch. Dist.,* 8 S.W.3d 26, 31 (Tex.App.—Austin 1999, no pet. h.) (citing *Harris County Appraisal Dist. v. Krupp Realty Ltd., Partnership,* 787 S.W.2d 513, 515 (Tex.App.—Houston [1st Dist.] 1990, no writ)). A deviation from the requirements of the statute which does not seriously hinder the legislature's purpose in imposing the requirement is substantial compliance. *Id.*

■■■ According to appellant, the camera system allowed a manager to view the interior of the arcades better than the naked eye. Therefore, appellant contends, there is a fact issue regarding whether it substantially complied with the purpose of preventing illegal sexual activity in the arcades. However, as discussed, the council sought to provide an open, direct, and unobstructed view of the arcades from the manager's station. Although appellant may have had a means of monitoring the interior of its arcades, it did not afford a "direct line of sight" view from the manager's station as set forth in the ordinance.

Thus, it did not comply with an essential requirement of the ordinance. Significantly, the council may have reasoned that requiring arcades to be open, notwithstanding any video surveillance, would remove the feeling of privacy its occupants might otherwise have, thereby discouraging illegal sexual activity.

The Fourteenth Court of Appeals has interpreted a predecessor of the present ordinance. *See City of Houston v. Mitchell,* 737 S.W.2d 370, 371–73 (Tex.App.—Houston [14th Dist.], 1987, writ denied). Like the present ordinance, that ordinance required "an unobstructed view of every area of the adult arcade to which any patron is permitted access for any purpose from that manager's station.... The view required ... must be by direct line of sight from the manager's station." *Id.* The court concluded that the ordinance prohibited fully or partially enclosed booths. *Id.* at 372–73.

We conclude that an arcade which may be enclosed, but is monitored by video camera, does not substantially comply with the ordinance, which requires a direct line of sight. To the extent that they do not encompass a First Amendment challenge of the ordinance, appellant's fourth and fifth issues are overruled.

Appellant contends, in its sixth issue, that there is a fact issue regarding whether the ordinance violates its rights under the First Amendment because the predominant purpose of the ordinance was to target the viewing of adult movies in arcades, which is protected speech under the First Amendment. By its seventh issue, appellant asserts the trial court erred in granting summary judgment because its argument that the ordinance violated the First Amendment was not barred by *res judicata.*

As appellee notes in its brief, and as it explained in its motion for summary judgment, the constitutionality of section 28–101 of the ordinance under the First Amendment was litigated in *N.W. Enterprises, Inc. v. City of Houston,* 27

F.Supp.2d 754, 768 n. 11 (S.D.Tex.1998). In that case, a federal district court held that the structural, visibility, and lighting requirements in sections 28–101 and 128–103 were content-neutral and required intermediate level scrutiny. *Id.* at 827. The court concluded that the restrictions were narrowly tailored to serve the substantial governmental interest in decreasing public lewdness and prostitution inside sexually oriented businesses. *Id.* Thus, the court concluded these sections were facially valid under the First Amendment. *Id.*

 Res judicata operates to prevent relitigation of claims that have been finally adjudicated, or could have been raised with proper diligence in the course of previous litigation, that terminated in final judgment, over the same subject matter. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1992). When the first lawsuit at issue is decided in federal court, federal law controls the determination of whether res judicata bars the present state court proceeding. *San Antonio Ind. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 281 (Tex.1996); *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex. 1990). Under federal law, res judicata will apply if the parties are identical in both suits, the prior judgment is rendered by a court of competent jurisdiction, there is a final judgment on the merits, and the same cause of action is involved in both cases. *Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1172 (5th Cir.1992); *Eagle Properties, Ltd.,* 807 S.W.2d at 718. Because appellee raised res judicata as an affirmative defense at the summary judgment stage, it bore the burden of proving each of these elements conclusively. *See Johnson & Johnson Medical, Inc. v. Sanchez,* 924 S.W.2d 925, 927 (Tex.1996).

 Appellant was one of a multitude of plaintiffs in the federal suit against the City involving ordinance 97–75. *See N.W. Enterprises, Inc.,* 27 F.Supp.2d at 768 n. 11. Thus, the parties are identical in both suits. Next, the judgment was rendered

by a court of competent jurisdiction. Appellees attached appellant's petition from the suit in federal court in which appellant admits the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The federal district court granted a partial summary judgment, concluding sections 28–101 and 28–103 were constitutional, by a written memorandum opinion. The opinion was eventually reduced to a final judgment. Thus, there was a final judgment on the merits.

Finally, we must consider whether the same cause of action was involved in the federal district court as in the present suit. In both cases, appellant challenged the constitutionality of the ordinance, arguing the ordinance targeted speech protected under the First Amendment. The court concluded the restrictions were content neutral, and that the requirements were facially valid under the First Amendment. Having previously litigated this claim in federal court, the doctrine of res judicata precludes appellant from raising it again.[6] Appellant's sixth and seventh issues are overruled.

We now return to appellant's fifth issue, in which it complains there is a fact issue regarding whether the ordinance was narrowly tailored to protect the City's interest in accordance with the First Amendment. This is an applied challenge in which appellant contends that because video surveillance is a method superior to the naked eye in monitoring arcades, an ordinance which requires a direct line of sight and precludes the use of video surveillance in enclosed booths is not narrowly tailored to further the City's interest.

■ Appellant urges that the ordinance is unconstitutional under *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In *O'Brien*, the Supreme Court announced that a governmental regulation does not infringe upon First Amendment rights if: (1) the

regulation is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the interest furthered is unrelated to the suppression of free expression; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377, 88 S.Ct. 1673; *see City of Dallas v. MD II Entertainment, Inc.*, 974 S.W.2d 411, 413 (Tex. App.—Dallas 1998, no writ). The *O'Brien* test does not require the government to use the "least intrusive means" of regulation. *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. 2746.

■ Appellant's challenge is limited to the fourth *O'Brien* factor. That is, appellant contends the restriction on First Amendment speech is greater than necessary to further the City's interest. We conclude the ordinance, by requiring a direct line of sight from the manager's station into arcades, does not place a restriction on First Amendment speech greater than that which is essential to the furtherance of the City's interest.

■ A city has a substantial interest in regulating sexually oriented businesses. *Adust Video v. Nueces County*, 996 S.W.2d 245, 253 (Tex.App.—Corpus Christi 1999, no pet.) (citing *City of Renton v.. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). Requiring a direct line of sight from the manager's station into arcades, which necessarily prohibits enclosed arcades, regardless of video surveillance, places little, if any, restriction on

---

**6.** We note that appellant's applied challenge of the ordinance under the First Amendment, dealing with whether the ordinance was over-

broad in precluding the use of video cameras to monitor arcades, has not been litigated and may be reviewed on its merits.

First Amendment speech. The restriction does not affect appellant's ability to show videos in the arcades nor its patrons' right to view them. *See id.* The restriction limits itself to visibility of patrons; it does not limit who may access the arcades, the content of the films shown in the arcades, the number of films shown, nor the hours during which the films are shown. The means chosen are not substantially broader than necessary to achieve the government's interest. Appellant's First Amendment challenge in issue five is overruled.

■■■ In its first issue, appellant contends the trial court's granting of summary judgment was improper because the City's notice that it was denying appellant's application for the permit did not comply with the specificity requirements of the ordinance. Section 28–93(d) of the ordinance provides, in relevant part, "[i]f a permit is denied, then a notice thereof setting forth the specific reasons therefor shall be given to the applicant and the owners." HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–93(d). In denying the permit, the City sent appellant a letter stating the following reasons for denial:

> (1) Your adult arcade is in violation of Section 28–93(b)(1) of the Adult Arcade/Adult Mini–Theater Ordinance having to do with the view, design, and lighting requirements.
> (2) The application that you submitted is in violation of Section 29–92(c).

■■■ Appellant contends, without citing any authority, that this notice does not satisfy the specificity requirement of the ordinance. According to appellant, this notice was insufficient to apprise it of any infirmities it would have to defend against. An appellant has the burden to bring forth sufficient record and authority to support reversible error. TEX.R.APP.P. 38.1(h); *Pierce v. First Nat. Bank of Alvin*, 899 S.W.2d 365, 371 (Tex.App.—Houston [14th Dist.] 1995, no writ). A point of error not

supported by authority is waived. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983); *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Even if appellant had provided authority in support of its argument, its own letter of appeal belies its argument that it did not have notice. By appellant's letter of appeal dated July 23, 1998, it admitted that an officer of the Houston Police Department "orally confirmed that the 'view' and 'design' infirmities alleged[ly] relate to the installation of video cameras which allegedly fail to comply with the 'direct line of sight' provisions within Section 28–101 of the Ordinance.... [The officer] confirmed that [the violation of section 28–99] also relates to the alleged 'line of sight' violation." Thus, appellant had actual notice of the reasons for the denial of the permit prior to the hearing of August 19, 1998. Appellant has failed to show that the notice given did not comply with the specificity requirements of the ordinance, and that he lacked adequate notice to prepare a defense of the denial of the permit. Appellant's first issue is overruled.

By its second issue, appellant contends the trial court erred in granting summary judgment because the hearing officer erroneously held a second hearing on the appeal of the denial of the permit in contravention of the ordinance. According to appellant, the hearing officer lacked jurisdiction to conduct a reconsideration of his initial ruling because the ordinance only provides for a single hearing. Section 28–99 of the ordinance governs appeals and provides that an applicant shall be entitled to a hearing. The ordinance refers to a hearing throughout in the singular. From this, appellant infers that the ordinance prohibits a second hearing or rehearing.

■■■ The granting of a rehearing by an administrative agency[7] is a discretion-

---

**7.** An administrative agency is "[a] governmental body charged with administering and implementing particular legislation." BLACK'S

LAW DICTIONARY 29 (6th ed.1990). In the present case, the Houston City Council has authorized a hearing officer to consider appeals

ary matter. *Texas State Bd. of Dental Examiners v. Silagi,* 766 S.W.2d 280, 285 (Tex.App.—El Paso 1989, writ denied) (citing *Braswell Motor Freight Lines, Inc. v. United States,* 275 F.Supp. 98, 103 (W.D.Tex.1967), *aff'd,* 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968)). Until an agency issues an effective final order, the agency retains jurisdiction over the matter and can withdraw previous orders and issue new ones. *Star Houston, Inc. v. Texas Dept. of Transp., Motor Vehicle Div.,* 957 S.W.2d 102, 106 (Tex.App.—Austin 1997, writ denied); *Lone Star Greyhound Park v. Texas Racing Comm'n,* 863 S.W.2d 742, 745–46 (Tex.App.—Austin 1993, writ denied).

▇▇▇ In this case, when the trial court held the rehearing, it had not issued a written order as required by section 28–114. We conclude the hearing officer retained jurisdiction over the permit dispute to hold a rehearing. The hearing officer did not abuse its discretion in holding a rehearing. Appellant's second issue is overruled.

Appellant argues, by its third issue, that the trial court erred in granting summary judgment because, to the extent the ordinance confers an implied right to conduct a second hearing on the denial of a permit, it violates the First Amendment to the United States Constitution by failing to provide time restraints on such additional hearings and orders. Appellant contends that if the ordinance permits the hearing officer to conduct reconsideration hearings, then it is unconstitutional on its face for failing to provide explicit time parameters within which a decision on the reconsideration must be rendered. Appellant cites *FW/ PBS v. City of Dallas,* 493 U.S. 215, 110

---

from the denial of permits. *See* HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, §§ 28–113, 28–114, 28–135.

**8.** The ordinance allows that the notice of issuance or denial of the permit may be extended until the thirtieth day after receipt of the application if "the police chief upon notice to the applicant that the police chief has been

---

S.Ct. 596, 107 L.Ed.2d 603 (1990), in furtherance of this argument.

In *FW/PBS,* the Supreme Court struck down a Dallas sexually oriented business ordinance as a prior restraint on the First Amendment, when it failed to provide a definite time limit for issuance of a license. *Id.* at 226–27, 110 S.Ct. 596. The Court held that two safeguards are essential for ordinances governing the issuance of licenses for First Amendment protected businesses: (1) "the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and [ (2) ] there must be the possibility of prompt judicial review in the event that the license is erroneously denied." *Id.* at 228, 110 S.Ct. 596.

The ordinance in this case requires the chief of police to issue or deny a permit within twenty days of receipt of an application.[8] HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–93. Thus, the Houston ordinance, unlike the Dallas ordinance in *FW/ PBS,* provides a definite and reasonable time limit for issuance of a license.

▇▇▇ Appellant contends there is no possibility for prompt judicial review as required by *FW/PBS* if a hearing officer may conduct unlimited rehearings. The ordinance requires the hearing officer to render a written decision within five days of the conclusion of the hearing. HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–125(e). In the event that the hearing official does not give timely notice of his decision, the applicant is entitled to a temporary permit upon written demand, which is valid until the third day after the hearing official gives notice of his decision on the appeal. HOUSTON, TEX., MUNICIPAL CODE,

---

unable, after diligent effort, to schedule the conduct of any required inspections of the adult arcade or adult min-theatre with the liaison person designated therefor in the application by the nineteenth day next following the date of his receipt of the application." HOUSTON, TEX., MUNICIPAL CODE, Ord. 97–75, § 28–93.

Ord. 97–75, § 28–125(f). Thus, if the hearing officer fails to issue a written order within five days of the hearing because of a motion for rehearing or reconsideration, the applicant is entitled to a temporary permit upon written demand. We conclude the ordinance provides prompt judicial review as required by *FW/PBS* and is not a prior restraint on First Amendment speech. Appellant's third issue is overruled.

The summary judgment is AFFIRMED.