In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00055-CR
______________________________


KENNETH LINICOMN, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 3rd Judicial District Court
Anderson County, Texas
Trial Court No. 27486


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Kenneth Linicomn was indicted for the offense of possession of a controlled
substance, cocaine, in an amount less than one gram. The indictment alleged two prior
felony convictions, and the charged offense was thus punishable as a second degree
felony.


 Linicomn was tried in November 2004. Before trial, Linicomn moved the trial court
to suppress evidence obtained during his arrest and the police investigation. The trial court
denied that motion. Following presentation of evidence, the jury could not reach a
unanimous decision, and the trial court declared a mistrial. A new trial was held in January
2005, and that jury convicted Linicomn and assessed punishment at twenty years'
imprisonment and a $5,000.00 fine. The trial court sentenced Linicomn according to the
jury's verdict. 
Â Â Â Â Â Â Â Â Â Â Linicomn complains on appeal that the trial court erred in failing to conduct a
rehearing on the motion to suppress which had been denied before his first trial.
Â Â Â Â Â Â Â Â Â Â Linicomn's appellate argument is that the trial court was obligated to rehear his
motion to suppress before the second trial commenced. Linicomn claims the trial court's
failure to rehear the suppression issue denied Linicomn his right to a fair trial.
Â Â Â Â Â Â Â Â Â Â At a pretrial hearing (of the second trial, which resulted in the instant conviction),
shortly before the State presented its case-in-chief, the attorneys and the trial court
discussed motions (which had been filed as part of the first trial) that "carr[ied] over to this
[current] trial." As regards the suppression motion filed before Linicomn's first trial, the
following exchange took place:
Â 
THE COURT: Are you asking me to take up anything on the motion
to suppress now?
Â 
[DEFENSE COUNSEL]: If you are willing to reconsider the issue. 
Judge Evans ruled to allow it in. If you want to reconsider the issue, I will be
happy to argue it again, but I was not anticipating doing that.
Â 
THE COURT: No. I will honor the other judge's ruling in the matter. 
The ruling on the motion to suppress, I will defer to Judge Evan's ruling. 

Â Â Â Â Â Â Â Â Â Â To preserve error for appellate review, (1) the complaining party must make a
timely objection specifying the grounds for the objection, if the grounds are not apparent
from the context; (2) the objection must be made at the earliest possible opportunity;
and (3) the complaining party must obtain an adverse ruling from the trial court. Dixon
v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). 
Â Â Â Â Â Â Â Â Â Â Linicomn made no objection to the trial court's deference to the prior ruling and did
not ask the trial court specifically to reconsider the suppression decision made at the
previous trial. Based on his statement that he did not "anticipat[e]" arguing or presenting
evidence on the issue of suppression, it is evident he did not seriously want the issue
revisited. With no explicit objection, the trial court's announcement that he would defer to
the previous ruling can certainly not be characterized as a ruling. 
Â Â Â Â Â Â Â Â Â Â Linicomn preserved nothing for appellate review. Accordingly, we overrule his point
of error. 
Â Â Â Â Â Â Â Â Â Â We affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice Â 

Date Submitted:Â Â Â Â Â Â August 26, 2005
Date Decided:Â Â Â Â Â Â Â Â Â September 27, 2005

Do Not Publish




on of "commercial instrument" as follows: "'Commercial instrument' means anything reduced
to writing which is executed or delivered as evidence of an act or agreement, and said writing relates
to or is connected with trade, and traffic, or commerce in general, or is occupied with business and
commerce." This definition was included in the charge with no objection from Shipp. However,
Shipp's appellate brief (without mentioning the above definition) posits that the term "commercial
instrument" means something entirely different from that contained within the instructions contained
in the charge. Although the brief does not identify it in so many words, we conclude this to be a
challenge to the jury charge. 

 When construing statutory provisions, courts should generally give effect to their plain
meaning. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). By construing provisions
according to their plain meaning, courts properly effectuate the collective legislative intent behind
the enactment. Id. Thus, since the best evidence of the collective legislative intent is the statutory
text, rules of statutory construction are utilized to ascertain the meaning of that text. Id. These
canons of construction, however, are merely rules of logic used to assist in the interpretation of
statutory provisions. Id. at 785 n.3. The duty of the appellate court is to construe this provision
according to its "plain" textual meaning without resort to extratextual sources. See id. at 785;
Rosenblatt v. City of Houston, 31 S.W.3d 399, 403 (Tex. App.--Corpus Christi 2000, pet. denied)
(statutory rules of construction also apply to construing city ordinances). We will, however, also
resort to extratextual sources to construe this provision if we decide that it is ambiguous or that
construing it according to its "plain" textual meaning will lead to "absurd results." Jordan v. State,
36 S.W.3d 871, 873 (Tex. Crim. App. 2001). The cardinal rule is to discern and give effect to the
intent of the legislative body that enacted this provision. See Boykin, 818 S.W.2d at 785-86;
Rosenblatt, 31 S.W.3d at 403. "In absence of special definitions, statutory language can be measured
by common understanding and practices or construed in the sense generally understood." Carroll
v. State, 911 S.W.2d 210, 220 (Tex. App.--Austin 1995, no pet.) (citing Ely v. State, 582 S.W.2d
416, 419 (Tex. Crim. App. [Panel Op.] 1979)). Statutory words are to be read in context and
construed according to the rules of grammar and common usage. Tex. Gov't Code Ann. §
311.011(a) (Vernon 2005). The phrase "commercial instrument" is not defined in Black's Law
Dictionary or any Texas Code. Shipp's complaint and our research and analysis concerning it also
lead us to conclude that the term "commercial instrument" is not a phrase in common use;
accordingly, without a statutory definition of the term and the absence of a common use definition,
we find it difficult to absolutely define. 

 There appear to be two recent, unpublished, Texas cases addressing forgery convictions
where a commercial instrument was the alleged forged writing.

 In Graham v. State, No. 14-97-00840-CR, 1999 WL 298274 (Tex. App.--Houston [14th
Dist.] Apr. 13, 1999, pet. denied) (not designated for publication), Graham was convicted of forgery
of a commercial instrument. A merchandise credit slip from an Ann Taylor clothing store worth
$43.39 had been left in a day planner in a courtesy van driven by Graham. Graham admitted taking
the day planner and, after removing the credit slip, discarding the day planner. She then used the
credit slip at the Ann Taylor store to purchase jeans. There was testimony that the credit slip was
akin to a gift card, and the way an individual uses the slip is substantially similar to a gift card (i.e.,
the credit slip could be used in the same way as one would use cash or a check, to acquire
merchandise). According to a store manager, a merchandise credit for a specific amount can be
redeemed at any Ann Taylor store for merchandise in the same fashion as if it were money, a check,
or a credit for the specified amount on the merchandise credit slip. The appellate court found the
evidence sufficient to support a finding that the credit slip qualified as a commercial instrument. Id.
at *18. We recognize that the trial court in that case cobbled together a definition of commercial
instrument, which might have fit the circumstances of that case (a definition which appears to have
been largely used as instructions in the charge employed in the case under review here). While we
do not say that the definition used in Graham was not appropriate under the circumstances of that
case, we question whether it is not so broad as to disqualify it for universal use. 

 In Runnels v. State, No. 14-03-00657-CR, 2005 Tex. App. LEXIS 1381 (Tex.
App.--Houston [14th Dist.] Feb. 15, 2005, pet. ref'd) (mem. op.) (not designated for publication),
the court of appeals sustained a conviction of forgery pursuant to Section 32.21(d) when the
defendant sold counterfeit football tickets. Runnels attacked the trial court's jurisdiction, claiming
that the indictment did not state that Runnels had forged a commercial instrument; ergo, Runnels
reasoned, the indictment only charged a misdemeanor, and the district court's jurisdiction was not
properly invoked. See Tex. Penal Code Ann. Â§ 32.21. The indictment charged that Runnels had
forged a document that had been duplicated and attached as an exhibit. While observing that the
statute does not define "commercial instrument" but with no other analysis of what elements are
necessarily contained within a document to constitute it as such a thing, the appellate court
determined that the indictment did, indeed, allege a state-jail felony. The inference which can be
drawn is that the appellate court concluded that tickets to an event qualified as a commercial
instrument. 

 We find little guidance in either of the opinions mentioned above to aid us in determining
what constitutes a commercial instrument. The credit slip mentioned in Graham is substantially
different from the receipt in this case. In Graham, the credit slip was "as good as money" (i.e., it
could be spent by the bearer to apply to the purchase of anything in that store). In Runnels, the
football tickets, such as they were, at least purported to offer a value to the holder because (if real)
they permitted the bearer to gain admittance to the stadium and be entitled to sit in a designated seat. 
Here, an authentic receipt would serve only as evidence of a transaction which had already been
concluded and not something which promised future benefits. Once the transaction was concluded,
the receipt held no further future value. There was no evidence presented at trial that such a receipt
would be valuable for future use (i.e., it could be redeemed for money) if it was returned with the
merchandise supposedly purchased for an exchange. (3) 

Ejusdem Generis

 Without an explicit statutory definition of the term "commercial instrument" or any
persuasive or controlling caselaw addressing this issue, we turn to one of the traditional doctrines
of statutory construction, the doctrine of ejusdem generis: when words of a general nature are used
in connection with the designation of particular objects or classes of persons or things, the meaning
of the general words will be restricted to the particular designation. Hilco Elec. Co-op, Inc. v.
Midlothian Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003) (citing Carr v. Rogers, 383 S.W.2d 383,
387 (Tex. 1964)); see also Hall St. Assocs., L.L.C. v. Mattel, Inc., __ U.S. __, 128 S. Ct. 1396, 1404,
170 L.Ed.2d 254, 264 (2008) ("[T]he old rule of ejusdem generis has an implicit lesson to teach here. 
Under that rule, when a statute sets out a series of specific items ending with a general term, that
general term is confined to covering subjects comparable to the specifics it follows."). (4)

 In applying the doctrine of ejusdem generis, we look at the specific items listed in Section
32.21(d) before the general term "other commercial instrument," those being "will, codicil, deed,
deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to
debit an account at a financial institution, or similar sight order for payment of money, contract,
release, or other commercial instrument." 

 We make the following observations: 


 ÂA will is a "document by which a person directs his or her estate to be distributed upon
death." Black's Law Dictionary 1628 (8th ed. 2004). 

 ÂA codicil is a "supplement or addition to a will, not necessarily disposing of the entire estate
but modifying, explaining, or otherwise qualifying the will in some way." Id. at 275.

 ÂA deed is "[a] written instrument by which land is conveyed," or "[a]t common law, any
written instrument that is signed, sealed, and delivered and that conveys some interest in
property." Id. at 444.

 ÂA deed of trust is "[a] deed conveying title to real property to a trustee as security until the
grantor repays a loan." Id. at 445.

 ÂA mortgage is "[a] conveyance of title to property that is given as security for the payment
of a debt or the performance of a duty and that will become void upon payment or
performance according to the stipulated terms." Id. at 1031.

 Â"Security instrument" is not defined in Black's. 

 ÂA security agreement is "[a]n agreement that creates or provides for an interest in specified
real or personal property to guarantee the performance of an obligation." Id. at 1387.

 ÂA credit card is "[a]n identification card used to obtain items on credit, usu. on a revolving
basis." Id. at 396.

 ÂA check is "(i) a draft, other than a documentary draft, payable on demand and drawn on a
bank or (ii) a cashier's check or teller's check." Tex. Bus. & Com. Code Ann.
Â§Â 3-104(f)(i)-(ii); or a "draft signed by the maker or drawer, drawn on a bank, payable on
demand, and unlimited in negotiability." Id. at 252.




 ÂA contract is "[a]n agreement between two or more parties creating obligations that are
enforceable or otherwise recognizable at law." Id. at 341.


 


 ÂA release is a "[l]iberation from an obligation, duty, or demand; the act of giving up a right
or claim to the person against whom it could have been enforced," or "[t]he relinquishment
or concession of a right, title, or claim." Id. at 1315.



 Observing that it could be construed as pedantic in listing the above definitions, this is done
to determine whether the receipt in Shipp's case can be said to fit within the statute's final, general
term, "other commercial instruments." We find that the enumerated examples in Section 32.21(d)
all relate to legal rights or relationships: the right to take or cede possession of property or property
rights or to hold another party to or release another party from contractually stated agreements. 
Checks and credit cards operate in lieu of cash to allow financial transactions. Each of the items
listed in Section 32.21(d) before the catchall "other commercial instruments" either grants or cedes
a valuable right. Therefore, we determine that such "other commercial instruments" are documents
in writing which either grant or cede a present or future benefit or right in the same or similar fashion
as those enumerated in Section 32.21(d).

 In contrast, an ordinary receipt simply memorializes a transaction that has previously
occurred, a fait accompli, which provides no future benefit. A receipt is a "written acknowledgment
that something has been received." Id. at 1296. Although the testimony provided by the State
showed many reasons why the fake receipt was faulty and demonstrated that such receipts can be
cross-checked for veracity a number of ways, there was no testimony provided here to demonstrate
that a receipt issued by this Wal-Mart store is anything more than the memorialization of a past
transaction, as opposed to the other kinds of things granting or ceding future benefits or rights listed
in Section 32.21(d). Although we can conceive of situations in which a receipt might be used by
some in more ways than those contained in the classic definition of the term, there was no evidence
of that adduced in such a regard here. We determine that under the circumstances in this case, the
definition of "commercial instrument" as contained in the jury charge was erroneous. 

 Since, without saying so, this disagreement with the accuracy of the definition of
"commercial instrument" as employed in the jury charge amounts to an alleged jury charge error, we
first determine whether sufficient harm resulted from the error to compel reversal. Ngo v. State, 175
S.W.3d 738, 743-44 (Tex. Crim. App. 2005). When error occurs in failing to properly instruct the
jury, our review of the charge is under the Almanza standard. Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984) (op. on reh'g). Under Almanza, the standard of review for errors in the
jury charge depends on whether the defendant properly objected. Id.; see Mann v. State, 964 S.W.2d
639, 641 (Tex. Crim. App. 1998); Gornick v. State, 947 S.W.2d 678, 680 (Tex. App.--Texarkana
1997, no pet.). If a proper objection was raised, reversal is required if the error is "calculated to
injure the rights of the defendant." Almanza, 686 S.W.2d at 171. In other words, an error that has
been properly preserved is reversible unless it is harmless. Id. If a defendant does not object to the
charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and
impartial trial. Rudd v. State, 921 S.W.2d 370, 373 (Tex. App.--Texarkana 1996, pet. ref'd).

 Under the instruction contained in the jury charge, the receipt itself would fall easily within
the definition of a "commercial instrument." But in testing this evidence by comparing it to a
hypothetically-correct jury charge (which would include an instruction having a correct definition
of "other commercial instrument" as we have suggested), the evidence is insufficient to support the
verdict of the jury because there was no evidence that the receipt either granted or ceded any present
or future right or benefit. As a consequence, the erroneous instruction made the difference between
a guilty verdict and one that would be legally insufficient to support a finding of guilt. Under these
circumstances, therefore, egregious harm resulted. 

 Accordingly, the evidence was legally insufficient to support a conviction for forgery of a
commercial instrument. Because the jury was not charged on the lesser offense of forgery, we need
not decide whether there was sufficient evidence to support a conviction on that offense. See Thorpe
v. State, 831 S.W.2d 548, 552 (Tex. App.--Austin 1992, no pet.). 

 [A] court of appeals may reform a judgment of conviction to reflect conviction of a
lesser included offense only if (1) the court finds that the evidence is insufficient to
support conviction of the charged offense but sufficient to support conviction of the
lesser included offense and (2) either the jury was instructed on the lesser included
offense (at the request of a party or by the trial court sua sponte) or one of the parties
asked for but was denied such an instruction. 

Haynes v. State, 273 S.W.3d 183, 185 (Tex. Crim. App. 2008). 

 We reverse the judgment as to Shipp's conviction and render an acquittal in this cause
number. 



 Bailey C. Moseley

 Justice


Date Submitted: April 27, 2009

Date Decided: July 23, 2009


Publish


1. In a single appeal, Shipp challenges three convictions, obtained in a single trial, for
possession of a controlled substance; forgery of a government instrument; and this matter (forgery
of a commercial instrument). Please see our opinions in cause numbers 06-08-00122-CR and 06-08-00123-CR regarding the first two convictions. 
2. In the absence of a definition of "commercial instrument" in the Texas Penal Code, Shipp
invites us to employ the Texas Business and Commerce Code's definitions of "instrument." See Tex.
Bus. & Com. Code Ann. Â§Â§ 3.104(b), 9.102(a)(47) (Vernon Supp. 2008). These essentially define
instrument as a negotiable instrument, although in the distinct contexts of negotiable instruments and
secured transactions, respectively. Further, the definitions of instrument as "a negotiable instrument
or any other writing that evidences a right to the payment of a monetary obligation" is not necessarily
consistent with the other examples of specified writings in Section 32.21 of the Texas Penal Code
(see our discussion of ejusdem generis, below). Therefore, we decline Shipp's invitation to
transplant those definitions into this case. 
3. Cf. State v. LaPointe, 345 So.2d 362, 364 (Fla. Dist. Ct. App. 1977), finding forged football
tickets qualified as "receipt for money" under Florida forgery statute, which is substantially more
broad and inclusive than Section 32.21(d) of the Texas Penal Code. 
4. "For example, in the phrase horses, cattle, sheep, pigs, goats, or any other farm animal, the
general language or any other farm animal--despite its seeming breadth--would probably be held
to include only four-legged, hoofed mammals typically found on farms, and thus would exclude
chickens." Black's Law Dictionary 556 (8th ed. 2004).