**In re Douglas W. HANCOCK and Wife, Rose Ann Hancock, Debtors.**

**Bankruptcy No. 90-60731.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

April 3, 1991.

Larry Z. Sechrist, Kilgore, Tex., for Douglas W. Hancock and wife, Rose Ann Hancock, debtors.

Dennis McKinney, Harbour, Kenley, Boyland, Smith & Harris, Longview, Tex., for Longview Bank and Trust.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of the Motion of Debtors, Douglas W. Hancock and Rose Ann Hancock, to Avoid Lien and the Motion of Creditor, Longview Bank and Trust Company, for Relief from the Automatic Stay pursuant to a regularly scheduled hearing on September 12, 1990, in Tyler, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule of Procedure 7052 and disposes of all the issues presented to the Court.

## FACTUAL BACKGROUND

The facts of the case before this Court are not disputed. On June 28, 1989, Douglas Hancock, hereinafter known as ("Debtor"), executed a simple interest note, disclosure and security agreement in the principal sum of $8,370.01 in favor of Longview Bank and Trust Company, hereinafter known as ("Bank"). Among the items listed as security for this agreement was Debtor's 1985 318 model BMW, Vehicle

Identification No. WBAAK8405F8781032. However, Bank failed to record its lien on the automobile's certificate of title in compliance with the state law of Texas.[1]

On May 14, 1990, Debtor and his wife, Rose Ann Hancock, hereinafter known as ("Debtors") filed for relief under Chapter 7 of the Bankruptcy Code. In their schedules, Debtors chose Texas state law exemptions and claimed the 1985 BMW in its entirety as exempt property. Subsequently, any interest that the estate may have held in the 1985 BMW was abandoned by the Chapter 7 Trustee.

On July 10, 1990, Bank filed a Motion for Relief from the Automatic Stay on the 1985 BMW. Debtors' response to Bank's Motion was to deny the existence of Bank's lien citing the failure of Bank to properly record its security interest in the automobile on the certificate of title. Soon after, on August 15, 1990, Debtors filed a Motion to Avoid Lien of Bank pursuant to the Trustee's avoidance powers of 11 U.S.C. § 545. Again, the basis for Debtors' Motion was their contention that Bank's failure to record its security interest in the 1985 BMW on the certificate of title rendered Bank's claim unsecured hence avoidable by the Trustee. For its part, Bank maintains that as between the parties to this action it has a valid security interest in the 1985 BMW notwithstanding its failure to note its security interest on the vehicle title. Both parties are in agreement that resolution of this issue of law is dispositive of both motions.

### DISCUSSION OF LAW

■ State law governs the formation and interpretation of security agreements between parties. *Justice v. Valley Nat. Bank*, 849 F.2d 1078, 1084 (8th Cir.1988) (In the absence of any conflict or unless some federal interest requires a different result, the law of the state where the property is situated governs questions of property rights); *In re: Jaffe* 111 B.R. 701, 703 (Bkrtcy.N.D.Ill.1990) (Bankruptcy courts

should look to state law to determine property rights). In accordance with Texas law, a security interest arises and is enforceable if an agreement is written, value has been given, and the debtor has rights in the collateral. V.T.C.A., Bus. & C. § 9.203(a).[2] When all three requirements for a security agreement are met, it attaches and becomes enforceable against a debtor with respect to the collateral. § 9.203(b). To the extent that "conflicting security interests are unperfected, the first to attach has priority." § 9.312(e)(2).

■ The method of perfection of security interests is also governed by Article 9. Article 9.302(c)(2) mandates that perfection of security interests in automobiles is governed by the Texas Certificate of Title Act. Specifically, the Texas Certificate of Title Act requires that a security interest in an automobile "may be perfected only by notation of the lien on the certificate of title in accordance with this Act." Vernon's Ann.Civ.St. art. 6687–1, § 41(a) (1977 & Supp.1991). So without further elaboration, as a matter of law, it is clear to this Court that Bank has failed to properly perfect its security interest in Debtors' 1985 BMW in accordance with the Texas Certificate of Title Act and is accordingly unperfected. However, the unperfected status of Bank does not divest Bank of its security interest in Debtors' 1985 BMW. Perfection of liens is a ranking device only. The time of perfection determines the order of priority of valid security interests. We are not concerned here with ranking of valid security interests as there is only one lien claimed. Thus, the Court must examine the argument and statutory basis for Debtors' proposal to avoid Bank's lien.

■ Under certain limited circumstances, a debtor may utilize certain of the Trustee's unexercised avoidance powers for the express purpose of avoiding transactions in whole or in part as to exempt property:

---

1. Vernon's Ann.Civ.St. art. 6687–1, § 41(a) (1977 and Supp.1990).

2. All references to Article 9 of the Texas Business and Commerce Code will be V.T.C.A., Bus. & C.

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under sub-section (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under Section 544, 545, 547, 548, 549 or 724(a) of this title or recoverable by the trustee under Section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h). Based on this authority to assert some of the Trustee's avoidance powers, the Debtors contend that they have a right to avoid Bank's lien. The Debtors bring the Motion to Avoid Liens "... pursuant to 11 U.S.C. § 545(2) and Bankruptcy Rule 4003(d)." However, it is the opinion of this Court that Debtors' contention is totally erroneous as to the application of 11 U.S.C. § 545.

■ In analyzing Debtors' reliance on 11 U.S.C. § 545, this Court is of the opinion that any such reliance is misplaced. By definition, "a statutory lien is one that is created by statute, arises automatically and is not based on an agreement to give a lien or on judicial action. Mechanics', materialman's, warehousemen's, and tax liens are examples. Consensual liens are not affected by § 545." 4 *Collier on Bankruptcy,* para. 545–01[1] at p. 545–2 (15th Ed.1991). As such, the consensual nature of the security agreement between Bank and Debtors clearly renders 11 U.S.C. § 545 inapplicable. However, this Court will still address specifically why under any circumstance Debtors would be unable to avoid Bank's security interest.

■ Although Debtors did not argue the application of 11 U.S.C. § 522(h), they did reference B.R. 4003(d) which refers to 11 U.S.C. § 522(f). Apparently Debtors were attempting to exercise some avoidance power contained in 11 U.S.C. § 522. On its face, 11 U.S.C. § 522(h) grants Debtors certain unexercised trustee avoidance powers for the express purpose of claiming exemptions. *In re: Fagan,* 26 B.R. 212, 214 (Bkrtcy.W.D.Ky.1982). Pursuant to 11 U.S.C. § 522(h), Debtors could assert the Trustee's avoidance rights as a lien creditor. 11 U.S.C. § 544(a)(1). In accordance with the Texas Business and Commerce Code, lien creditors are in a priority position vis-a-vis unsecured creditors. § 9.301(a)(2). However, while this Court does recognize the statutory basis for Debtors' argument, this Court does not find that Debtors qualify to assert these avoidance powers. Limiting language in 11 U.S.C. § 522(h) structures Debtors' avoidance powers on compliance with 11 U.S.C. § 522(g)(1), which requires a finding, as a prerequisite to Debtors' assertion of avoidance of transfers, that "such transfer was not a voluntary transfer of such property by the debtor" or that "the debtor did not conceal such property." 11 U.S.C. § 522(g)(1). Given the voluntary nature of Debtors' security agreement with Bank, it is clear to this Court that Debtors may not avail themselves of any unused trustee's avoidance powers pursuant to 11 U.S.C. § 522(h). *In re: Savage,* 92 B.R. 259, 261 (Bkrtcy.S.D.Ohio 1988) (Granting of a security interest in an automobile in exchange for loan proceeds is not an involuntary transfer); *In re: Millerburg,* 61 B.R. 125, 128 (Bkrtcy.E.D.N.C.1986); *In re: Dipalma,* 24 B.R. 385, 387 (Bkrtcy.D.Mass. 1982) (The voluntary grant of a security interest, as opposed to a lien created by operation of law or the fixing of a judicial lien, is clearly a voluntary transfer); *Matter of Lamping,* 8 B.R. 709, 711 (Bkrtcy.E. D.Wis.1981) (By executing a security agreement on an automobile, the debtors voluntarily transferred an interest in property, namely a security interest, to the lien holder). Accordingly, Debtors' Motion to Avoid Lien is hereby DENIED. The Court will now address Bank's Motion to Lift Automatic Stay.

■ At the regularly scheduled hearing, the Bank's unrebutted testimony indicated that Debtors possessed no equity in the 1985 BMW. Additionally, the unrebutted testimony of Bank indicated that Debtors had failed to make any post-petition payments to the Bank on behalf of the 1985 BMW and that Debtors had allowed a lia-

bility insurance policy on the automobile to lapse. It is clear to this Court that Debtors' sole sanctuary from the effects of a Motion to Lift the Automatic Stay is Debtors' misplaced contention as to their ability to avoid the Bank's security interest. In that the Court has already ruled against the Debtor on this issue, the Court finds that Bank meets the requirements to lift stay pursuant to 11 U.S.C. § 362(d)(1) and (2) and accordingly, it is the opinion of this Court that Bank's Motion to Lift Stay should be GRANTED.