**Michael PIERCE,[1] Appellant,**

v.

**FIRST NATIONAL BANK
OF ALVIN, Appellee.**

**No. 14–94–00176–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 4, 1995.

---

1. While this matter was on appeal to this court, appellant, Michael Pierce, died. We are to adjudicate the cause and render judgment as if he were still alive. Tex.R.App.P. 9.

Robert V. Shattuck, Jr., Galveston, for appellant.

Randall Ferguson, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN.

## OPINION

LEE, Justice.

This is an appeal from an order granting First National Bank of Alvin's motion for summary judgment. In three points of error, Michael Pierce contends the summary judgment was improperly granted, the Bank's claim has been satisfied, and venue was improper. We reverse and remand.

In 1987, Roy Maze purchased a pleasure boat [2] with financing from First National Bank of Alvin (FNBA). In November or December 1992, Maze defaulted on this note to FNBA. FNBA brought suit against Maze and Royal Dodge, Inc. (Royal), an automobile dealership of which Maze was president and owner.[3] In this Maze and Royal suit, FNBA alleged various causes of action against Maze and Royal, including Maze's default on the boat financing. In January 1993, while the Maze and Royal suit was pending, Royal performed approximately $25,000 in repairs on the boat and, a month later, it foreclosed on its Mechanic and Materialman's Lien. In March 1993, Royal obtained new, "clear" certificates of title from the Parks and Wildlife Department for the boat and its two motors. Michael Pierce purchased the boat and motors from Royal and received Royal's certificates of title. Approximately six months later, on September 10, 1993, FNBA seized the boat from Pierce's residence. On September

13, 1993, a default judgment after answer in the Maze and Royal suit was entered in favor of FNBA holding Royal had wrongfully foreclosed on its Mechanic and Materialman's Lien, Royal's title to the boat was void, and revesting title in Maze subject to FNBA's lien.

On September 16, 1993, FNBA brought this action seeking declaratory relief that:

1. Pierce was not the record title holder of the boat.

2. Pierce failed to properly record under the Water Safety Act Chapter B–1, Certificates of Title for Motorboats and Outboard Motors.[4]

3. FNBA's lien is superior to any title of Pierce.

4. FNBA did not wrongfully repossess the boat.

5. Pierce was not an innocent bona fide purchaser for value.

FNBA moved for and was granted summary judgment against Pierce.

The standard of review to be followed in a summary judgment is well established. The movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts are resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

---

2. Throughout this opinion, boat, vessel and motorboat are used interchangeably. Each of these terms is intended to mean "vessel" as defined in § 31.003 of the Texas Parks & Wildlife Code. Neither party contends the Code does not apply. The summary judgment proof also indicates that the boat falls within the Code's purview. *See* TEX.PARKS & WILD.CODE ANN. § 31.003 (Vernon 1991). *See also* Jewett E. (Gene) Huff, *An Update on Liens and Where to Find Them*, BANKING L.INS. 1, 3–4 (1995).

3. Hereinafter this suit will be referred to as the "Maze and Royal suit." Michael Pierce was not ever a party to this suit. In addition, the summary judgment proof contains no evidence that Pierce was ever aware of this pre-existing litigation.

4. TEX.PARKS & WILD.CODE ANN. § 31.045, *et seq.* (Vernon 1991).

■ In his first point of error, Pierce contends that FNBA did not show that it was entitled to a summary judgment. FNBA argues that the dispositive issue is whether Pierce lacked title to the boat and motors because he did not: 1) have the certificates of title properly executed when he purchased the boat and motors; or 2) timely request new certificates of title from the Parks and Wildlife Department after he purchased the boat and motors.

■ Since 1977, the Water Safety Act has provided that ownership of all "used" boats and outboard motors would be evidenced by certificates of title. Ownership of a "new" boat or outboard motor is evidenced by a manufacturer's or importer's certificate. TEX.PARKS & WILD.CODE ANN. § 31.045 (Vernon Supp.1995). Security interests in boats and outboard motors are properly perfected by notation on the certificates rather than by filing a financing statement. TEX.BUS. & COM. CODE ANN. § 9.302 (Tex.UCC) (Vernon 1994); TEX.PARKS & WILD.CODE ANN. § 31.052 (Vernon Supp.1995); John Krahmer, *Commercial Transactions*, 34 Sw.L.J. 199, 223 (1980).

The certificate of title Pierce received when he purchased the boat and motors contained no notation of security interest by FNBA. The certificate of title indicated Royal was the owner with no liens or encumbrances. Therefore, when Pierce purchased the boat and motors, based on the certificates he received in the purchase, FNBA's lien was not properly perfected.

■ In order to sell a boat or outboard motor the seller must deliver a *properly endorsed* certificate of title to the purchaser. TEX.PARKS & WILD.CODE ANN. § 31.053 (Vernon Supp.1995).[5] In addition, the purchaser is required to apply to the Parks and Wildlife Department or the county tax assessor-collector for new certificates of title within twenty days after the sale. TEX.PARKS & WILD.CODE ANN. § 31.046 (Vernon Supp. 1995).[6]

■ FNBA contends that the certificate of title provisions in the Water Safety Act are analogous to the automobile Certificate of Title Act.[7] A lien on an automobile is also properly perfected by notation of a security interest on the certificate of title. TEX.BUS. & COM.CODE ANN. § 9.302 (Tex.UCC) (Vernon 1994); TEX.REV.CIV.STAT.ANN. art. 6687–1, § 41 (Vernon Supp.1995); *In re Hancock,* 126 B.R. 270, 272 (Bankr.E.D.Tex.1991). In support of its argument, FNBA relies on *Phil Phillips Ford, Inc. v. St. Paul Fire and Marine Ins. Co.,* 465 S.W.2d 933 (Tex.1971).

In *Phil Phillips Ford,* the Lays purchased an automobile in Oklahoma with financing from a finance company. The finance company properly perfected its security interest under Oklahoma law by filing a financing statement. The Lays then transferred their certificate of title to Dignan. Dignan applied for and received an Oklahoma certificate of title which did not indicate any outstanding security interests in the automobile. Dignan took the automobile to Texas where he applied for and received a Texas certificate of title which also did not include a notation of the original finance company's lien but did indicate a small lien from another bank. Dignan then sold the automobile to Phil Phillips Ford, who paid off the bank's lien. In this sales transaction, Dignan did not properly endorse the certificate of title as was required under the law in effect at the time. The finance company repossessed the automobile from Phil Phillips Ford and the dealership brought suit against the finance company for conversion and wrongful repossession.

5. In relevant part, § 31.053 provides:

(a) No person may sell, assign, transfer, or otherwise dispose of an interest in a vessel or an outboard motor without:

(5) delivering to the transferee a certificate of title for the vessel or outboard motor in the name of the transferor and properly endorsed to show the transfer or evidence of an involuntary transfer.

6. In relevant part, § 31.046 provides:

(a) Except as provided in Subsections (b) and (c) of this section, the purchaser of a vessel or an outboard motor shall apply to the department or to a county tax assessor-collector for a certificate of title not later than 20 days after the date of the sale of the vessel or outboard motor.

7. TEX.REV.CIV.STAT.ANN. art. 6687–1, § 33 (Vernon Supp.1995).

First, the supreme court determined that whether Phil Phillips Ford was an innocent purchaser was to be determined under Texas rather than Oklahoma law. Next, the court stated the general rule that "[u]nder the law of this state a lien may not be enforced against an innocent purchaser unless it is noted on the Texas certificate of title." *Id.* at 937. The court then noted that Dignan had not properly executed the certificate of title. The statute governing transfers of automobiles at the time [8] provided:

No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on a form prescribed by the Department before a Notary Public, which form shall include, among other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and *no title to any motor vehicle shall pass or vest until the transfer is so executed.*

*Id.* at 937 (emphasis in original). Based on this portion of the Certificate of Title Act, the Supreme Court determined that as between the finance company and Phil Phillips Ford, Dignan's sale was void. Because the sale was void, there was no delivery within the meaning of § 9.301 of the Business and Commerce Code. The court held the finance company's interest was superior to Phil Phillips Ford's interest and its repossession was not a conversion of Phil Phillips Ford's property. *Id.* at 937–38.

FNBA argues that Pierce's title was similarly void and it did not wrongfully repossess the boat and motors. The summary judgment proof indicates that Royal did not properly execute the certificates of title received by Pierce. The certificates of title were not signed on the front by Royal when it received the certificates from the Parks and Wildlife Department.[9] In addition, the back of the certificates of title were not properly completed when the boat and motors were sold to Pierce.[10] *See* Tex.Parks & Wild.Code

---

8. *Repealed by* Acts of 1973, 63rd Leg., p. 995, ch. 399, § 5 (current version at Tex.Rev.Civ.Stat.Ann. art. 6687–1, § 33 (Vernon Supp.1995)).

9. The following appears on the face of the certificate of title. The blank indicated was not signed by a Royal representative on any of the three certificates of title received by Pierce.

THIS TITLE MUST BE SIGNED IN INK UPON RECEIPT

---

SIGNATURE OWNER—OR AGENT

THE APPLICANT HAS STATED UNDER OATH THAT HE IS THE OWNER OF THE ABOVE DESCRIBED OUTBOARD MOTOR SUBJECT TO THE HEREIN DESCRIBED LIEN(S) AND ENCUMBRANCE(S) AND NO OTHERS, AND IT APPEARS UPON THE OFFICIAL RECORDS OF THE DEPARTMENT THAT AT THE DATE OF THE ISSUANCE OF THIS CERTIFICATE, SAID OUTBOARD MOTOR IS SUBJECT TO THE LIEN(S) HEREINBEFORE [sic] ENUMERATED.

10. The reverse side of each certificate of title received by Pierce was completed without a signature or seal by a notary as follows:

TITLE ASSIGNMENT

The ownership of this outboard motor is hereby assigned to:

/s/ C.M. PIERCE
Name of Purchaser

1307 OUTRIGGER GALVESTON TX 77554
Address City & State

I (we) am (are) the owner(s) of the outboard motor and I (we) hereby warrant the title to be free of all liens, except such as are shown on the face of this certificate or are fully described in an affidavit attached hereto.

Notary Seal

Signature ROYAL DODGE INC. Seller

ANN. §§ 31.047; 31.049 (Vernon 1991 & Supp.1995). Finally, Pierce never requested that new certificates of title be issued in his name. Thus, like the dealership in *Phil Phillips Ford*, the certificates received in the sales transaction were not properly executed.

It is clear that the supreme court's decision in *Phil Phillips Ford* was largely based on the portion of the Certificate of Title Act stating that "no title to any motor vehicle shall pass or vest until such transfer be so executed." There is no similar provision in the Water Safety Act making a sale void if the certificates of title are not properly executed. *See Saulny v. RDY, Inc.*, 760 S.W.2d 813, 815 (Tex.App.—Corpus Christi 1988, no writ) (noting the Water Safety Act does not provide that a violation renders a contract void). FNBA argues, however, that because § 31.053 requires a person to receive a *properly endorsed* certificate of title to sell a boat, Pierce's title was void. We disagree.

 A person who violates the certificate of title portion of the Act commits a Class "C" Parks and Wildlife Code misdemeanor and is punishable with a fine between $25 and $500. TEX.PARKS & WILD.CODE ANN. §§ 12.406; 31.127 (Vernon 1991); *Saulny*, 760 S.W.2d at 815. When construing a statute we are to ascertain the legislature's intent by considering the entire act. *Burlington Northern R. Co. v. Harvey*, 717 S.W.2d 371, 375 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In the Certificate of Title Act, the legislature clearly indicated that no title passed until the certificates of title were properly executed. The Water Safety Act, on the other hand, does not include a similar provision.

 The Water Safety Act was enacted to promote water safety and uniformity of laws relating to water safety. TEX.PARKS & WILD.CODE ANN. § 31.002 (Vernon 1991); *Saulny*, 760 S.W.2d at 815. There is no indication that the legislature intended the automobile Certificate of Title Act to apply to boat and outboard motor transactions. Instead, the Act provides that if there is a conflict between it and the Texas UCC, the provisions of the Texas UCC control. TEX. PARKS & WILD.CODE ANN. § 31.052(b) (Vernon 1991). Allowing security interests in boats and outboard motors to be governed by the general secured transaction rules of the Business and Commerce Code does not run afoul of the legislature's statutory purpose. *Phil Phillips Ford* and subsequent cases [11] are exceptions to the general rule that an unperfected security interest is subordinate to a buyer who took delivery of property without knowledge that it was subject to a security interest. *See* TEX.BUS. & COM.CODE ANN. § 9.301 (Tex.UCC) (Vernon 1991); *Chase Manhattan Bank v. J & L General Contractors, Inc.*, 832 S.W.2d 204 (Tex.App.—Beaumont 1992, no writ). As an intermediate appellate court, we only interpret the laws of the state. Without a clear expression by the legislature or the supreme court, we are bound by the Water Safety Act as written. Because it does not contain a provision similar to or incorporate the provisions of the Certificate of Title Act, we are not persuaded that boat and outboard motor certificates of title are also void because they are not properly executed. *See Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755 (Tex.App.—Dallas 1991, writ denied), *cert. denied*, —— U.S. ——, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992).

By /s/ _____ G. Moore _____.

Subscribed and sworn to before me this ___25th___ day of ___MARCH___ 19 _93_

_____ Notary Public

_____BRAZORIA_____ County, Texas

11. *See, e.g., Drake Ins. Co. v. King*, 606 S.W.2d 812 (Tex.1980); *Everett v. United State Fire Ins. Co.*, 653 S.W.2d 948 (Tex.App.—Fort Worth 1983, no writ); *Pfluger v. Colquitt*, 620 S.W.2d 739 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); John Krahmer, *Commercial Transactions*, 38 Sw. L.J. 207, 217 (1984).

In its summary judgment, FNBA did not allege or present any proof that Pierce had knowledge of its security interest when he purchased the boat and motors. Accordingly, there is at least a fact question remaining whether Pierce knew of FNBA's security interest. We, therefore, find the summary judgment was erroneously granted and sustain Pierce's first point of error.

 In his second point of error, Pierce contends FNBA's claim has been satisfied because the bank has received a judgment in the Maze and Royal suit, part of which is for the boat indebtedness. While it is true that if "a judgment debtor voluntarily pays and satisfies a judgment rendered against him, the cause becomes moot," *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex.1982), we know of no similar provision applicable when a party receives a judgment in a related suit. Pierce cites no authority in support of his argument. As the appellant, the burden is on him to bring forth sufficient record and authority to support reversible error and if he fails to carry this burden, any error is waived. TEX.R.APP.P. 50, 74; *Fiesta Mart, Inc. v. Hall*, 886 S.W.2d 440, 442 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 421 (Tex.App.—Houston [1st Dist.] 1994), *writ denied*, 38 Tex.Sup.Ct.J. 554 (Apr. 27, 1995). Pierce has not met this burden so his second point of error is overruled.

In his third point of error, Pierce contends that venue is properly in Galveston County. He argues that FNBA brought this declaratory judgment action to have the matter heard in a more favorable forum. He contends the suit is actually a conversion action and is properly in Galveston County where the property was seized.[12]

As our discussion of point of error one indicates, the primary question to be determined on remand is whether Pierce had knowledge of FNBA's security interest when he purchased the boat from Royal. The transaction occurred in Brazoria County, and, therefore, venue is permissible in that county. *See* TEX.CIV.PRAC. & REM.CODE ANN.

§ 15.001 (Vernon 1986). There is no mandatory venue provision which controls this action requiring it to be brought in Galveston County. *See Id.* at § 15.011 *et seq.; see also* Michol O'Connor, *O'Connor's Texas Rules—Civil Trials* at 372–73 (1994). Pierce's third point of error is overruled.

The summary judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

---

12. The day after this declaratory judgment action was filed, Pierce brought a conversion action in Galveston County. Because many of the same issues were present in that suit, it was abated.