NUMBER 13-99-692-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


BERNARD ROSENBLATT, AS APPLICANT 

FOR AVW, INC., D/B/A ADULT VIDEO

MEGAPLEXXX
, Appellant,


v.



CITY OF HOUSTON
, Appellee.

___________________________________________________________________


On appeal from the 189th District Court


of Harris County, Texas.


____________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Yañez, and Rodriguez


Opinion by Justice Rodriguez


 

 Bernard Rosenblatt, as applicant for AVW, Inc. d/b/a Adult Video
Megaplexxx, appellant, appeals from the granting of a motion for
summary judgment. Appellant challenges the summary judgment by
seven issues. We affirm.

 Adult Video Megaplexxx (Megaplexxx) is an adult bookstore
located in Houston, Texas. It contains adult video arcades(1) where
customers can enter booths to watch sexually explicit videos. In 1997,
the City of Houston (the City) enacted Ordinance 97-75, which amended
chapter 28 of its municipal code, having to do with sexually oriented
businesses. Section 28-10, which is found in division 3 governing adult
arcade and adult mini-theatre design, provides as follows:

 (a) If an adult arcade or adult mini-theatre has
one (1) manager's station designated pursuant to
section 28-92(c) of this Code, then the interior of
the adult arcade or adult mini-theatre shall be
configured in such a manner that there is an
unobstructed view of every area of the adult
arcade or adult mini-theatre to which any patron
is permitted access for any purpose from that
manager's station. If an adult arcade or adult
mini-theatre has two (2) or more manager's
stations designated pursuant to section 28-92(c)
of this Code, then the interior of the adult arcade
or adult mini-theatre shall be configured in such
a manner that there is an unobstructed view of
each area of the adult arcade or adult mini-theatre
to which any patron is permitted access for any
purpose from at least one (1) of the manager's
stations. The view required in this subsection
must be by direct line of sight from the manager's
station. 

 

 (b) It shall be the duty of the owners and
operator, and it shall also be the duty of any
agents and employees present in an adult arcade
or adult mini-theatre, to ensure that the view area
specified in subsection (a) remains unobstructed
by any merchandise, display racks or other
materials at all times that any patron is present in
the adult arcade or adult mini-theatre and to
ensure that no patron is permitted access to any
area of the adult arcade or adult mini-theatre
which has been designated as an area in which
patrons will not be permitted in the plan filed
pursuant to section 28-92 of this Code. 


 Houston, Tex., Municipal Code, Ord. 97-75, § 28-101(a) (emphasis
added).

 According to an affidavit of John Bratton, president of AVW, Inc.,
video cameras were installed in the arcade booths at Megaplexxx to
comply with the "direct line of sight" provision of Ordinance 97-75. 
Bratton affied that "[t]he cameras in the arcades transmit a picture of
the inside of the arcade to a monitor located in the manager's station. 
The video coverage is live, and simultaneously transmits a picture of the
inside of each and every arcade, as well as the hallways." According
to Bratton, "[p]atrons are advised in writing that their activities are
being monitored by a video camera, and that Adult Video Megaplexxx
does not permit lewd conduct of any kind." 

 According to an officer of the Houston Police Department, Vice
Division, during an inspection of Megaplexxx, he observed there is not
an unobstructed view of every area to which a patron is permitted
access. He also observed there was not a direct line of sight from the
manager's station and that the arcades have doors. Appellant does not
contest that, without the use of video surveillance, there is no direct,
unobstructed view from the manager's station to each area of the adult
arcade or adult mini-theatre to which any patron is permitted access. 

 Appellant applied for an adult arcade/adult mini-theater permit
with the City. The City denied the application by written letter on July
15, 1998. According to the letter, the City denied the permit because
(1) "[the] adult arcade is in violation of Section 28-93(b)(1)(2) of the Adult
Arcade/Adult Mini-Theater Ordinance having to do with the view
design, and lighting requirements[,]" and (2) "the application . . .
submitted is in violation of Section 28-92(c)."(3)

 Appellant pursued an appeal as authorized by the ordinance. A
hearing was held on the appeal on August 19, 1998, and the hearing
officer(4) concluded by stating, "I'm going to hold that the denial of the
permit was improper and then maybe [City] Council can straighten this
out." On August 24, 1998, the City moved for the hearing officer to
reconsider and uphold the denial of the permit. Appellant responded to
the motion for reconsideration on August 26, 1998. On September 22,
1998, the hearing officer reversed his prior ruling and signed a decision
affirming the denial of the permit. The decision states that the denial of
the permit "was based upon violations of Section 28-101(a); Adult
Video Megaplexxx Arcade's internal configuration does not permit an
unobstructed view from the manager's station by direct line of sight of
every area of the adult arcade to which patrons are permitted access." 
Thereafter, appellant appealed the hearing officer's decision to a district
court in Harris County. Both parties moved for summary judgment. 
The court granted the City's motion for summary judgment without
specifying the grounds on which it was rendered. This appeal ensued. 


 The proper inquiry on appeal is whether the defendant, in seeking
summary judgment, fulfilled his initial burden (1) to establish as a
matter of law that there remained no genuine issue of material fact as
to one or more essential elements of the plaintiff's cause of action or (2)
to establish his affirmative defense to the plaintiff's cause of action as
a matter of law. Casso v. Brand, 776 S.W.2d 551, 556 (Tex.1989);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex.1985); Pena v. State Farm Lloyds, 980 S.W.2d 949, 953 (Tex.
App.--Corpus Christi 1998, no pet.). In deciding whether there is a
disputed material fact issue precluding summary judgment, evidence
favorable to the non-movant must be taken as true. Nixon, 690 S.W.2d
at 549. Every reasonable inference must be indulged in favor of the
non-movant and any doubts resolved in his favor. Id. In this case, the
trial court granted summary judgment for the City; hence, we view all
evidence favorable to appellant, the non-movant, as true and indulge
every inference in its favor. 

 When there are multiple grounds for summary judgment and the
order does not specify the ground on which the summary judgment
was rendered, appellant must negate all grounds on appeal. State Farm
Fire & Cas. Co. v. S. S., 858 S.W.2d 374, 389 (Tex. 1993). If the
appellant fails to negate each ground on which the judgment may have
been rendered, we must uphold the summary judgment. Id.

 In its fourth and fifth issues, appellant avers the trial court erred
in granting summary judgment because appellant was in full
compliance with the ordinance as a matter of law, and there was a fact
issue regarding whether appellant substantially complied with the
ordinance.(5)

 Appellant first maintains it complied with the direct line of sight
provision of the ordinance by installing video cameras in the arcades. 
According to appellant, the video cameras afford the manager a direct
line of sight inside the arcades. The City urges that the direct line of
sight provision requires arcades to be visible from the manager's station
without the use of a medium. 

 The rules that apply to the construction of statutes apply as well
to the construction of municipal ordinances. Wende v. The Board of
Adjustment of the City of San Antonio, No. 04-99-00577-CV, 2000 WL
1059643 *5 (Tex. App.--San Antonio 2000, no pet. h.) (citing Mills v.
Brown, 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958)). The cardinal
rule of statutory construction is to discern and give effect to the intent
of the enacting body. Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex.
1994). We must first seek to discern that intent from the plain language
of the statute or ordinance. Id. 

 The ordinance provides that there must be an unobstructed view
of every area of the adult arcade or adult mini-theatre to which any
patron is permitted access from the manager's station and this view
must be by direct line of sight. The Houston City Council did not define
direct line of sight in the ordinance; thus we use the commonly
understood, everyday definition of the word direct when interpreting the
ordinance. Tex. Gov't Code Ann. § 311.011 (Vernon 1998). Black's Law
Dictionary defines direct as "[i]mmediate; proximate; by the shortest
course; without circuity; operating by an immediate connection or
relation, instead of operating through a medium; the opposite of
indirect." Black's Law Dictionary 315 (6th ed. 1990) (emphasis added). 
Webster's Dictionary defines direct as "a proceeding from one point to
another in time or space without any deviation or interruption . . .
marked by absence of an intervening agency, instrumentality, or
influence. . ." Webster's New Collegiate Dictionary 571 (1981 ed.)
(emphasis added). 

 Using the rules of construction, we presume the city council chose
the words "direct line of sight" carefully and intended for them to have
meaning and purpose. As provided in the ordinance, therefore, the use
of video cameras within enclosed booths does not satisfy the direct line
of sight requirement because it involves the use of a medium and
intervening agency.

 Appellant responds that such an interpretation of direct is
unreasonable, as it would result in a person from the manager's station
not being able to use eyeglasses, which are arguably a medium, to view
the arcades. We must avoid interpretations that would produce absurd
results or render other language mere surplusage. City of Amarillo v.
Martin, 971 S.W.2d 426, 430 (Tex. 1998) We do not believe by
requiring a direct line of sight, the council sought to prohibit the use of
eyewear to improve the line of sight. Unlike video cameras and
monitors, eyeglasses do not transmit images; rather, they refine images. 
We conclude that from the plain language of the ordinance, the council
did not intend for enclosed arcades with video surveillance to satisfy the
design requirements of section 28-101(a). 

 The legislative history in this case further supports this conclusion. 
When construing a statute or ordinance, whether or not the statute is
ambiguous on its face, we consider such matters as the object sought
to be attained by the statute, the circumstances involved, the legislative
history, the common law, former provisions, and laws on the same or
similar subjects. Tex. Gov't Code Ann. § 311.023 (Vernon 1998); Castle
v. Harris, 960 S.W.2d 140, 143 (Tex. App.--Corpus Christi 1997, no
pet.); Grothues v. City of Helotes, 928 S.W.2d 725, 728 (Tex. App.--San
Antonio 1996, no writ).

 Attached to the City's motion for summary judgment is a
transcript of a meeting held by the City's Sexually Oriented Business
Committee, during which the committee discussed proposed ordinance
97-75. According to an attorney making a presentation to the
committee, the purpose of the ordinance was to provide an open and
unobstructed view of the arcades, and to prevent illegal sexual activity. 
Although doors were not expressly prohibited in the ordinance,
according to one council member, they were effectively prohibited by
the requirement that there be an open view of every area where
customers are permitted. Appellee also attached the minutes of the
committee during which a draft ordinance was reviewed section by
section. There, the attorney stated, "[t]he point of the Adult Arcade
Ordinance is to eliminate the use of enclosed booths for viewing of such
materials for places involving illegal or sexual conduct . . . ." 

 We conclude appellant did not fully comply with the ordinance by
installing video cameras in booths that were not open and visible from
the manager's station without the use of a medium. 

 Appellant contends, alternatively, that it substantially complied
with the ordinance. Substantial compliance has been defined to mean
performance of the essential requirements of a statute. Stratton v.
Austin Ind. Sch. Dist., 8 S.W.3d 26, 31 (Tex. App.--Austin 1999, no pet.
h.) (citing Harris County Appraisal Dist. v. Krupp Realty Ltd.,
Partnership, 787 S.W.2d 513, 515 (Tex. App.--Houston [1st Dist.] 1990,
no writ)). A deviation from the requirements of the statute which does
not seriously hinder the legislature's purpose in imposing the
requirement is substantial compliance. Id. 

 According to appellant, the camera system allowed a manager to
view the interior of the arcades better than the naked eye. Therefore,
appellant contends, there is a fact issue regarding whether it
substantially complied with the purpose of preventing illegal sexual
activity in the arcades. However, as discussed, the council sought to
provide an open, direct, and unobstructed view of the arcades from the
manager's station. Although appellant may have had a means of
monitoring the interior of its arcades, it did not afford a "direct line of
sight" view from the manager's station as set forth in the ordinance. 
Thus, it did not comply with an essential requirement of the ordinance. 
Significantly, the council may have reasoned that requiring arcades to
be open, notwithstanding any video surveillance, would remove the
feeling of privacy its occupants might otherwise have, thereby
discouraging illegal sexual activity.

 The Fourteenth Court of Appeals has interpreted a predecessor of
the present ordinance. See City of Houston v. Mitchell, 737 S.W.2d
370, 371-73 (Tex. App.­Houston [14th Dist.], 1987, writ denied). Like
the present ordinance, that ordinance required "an unobstructed view
of every area of the adult arcade to which any patron is permitted
access for any purpose from that manager's station. . . . The view
required . . . must be by direct line of sight from the manager's station." 
Id. The court concluded that the ordinance prohibited fully or partially
enclosed booths. Id. at 372-73. 

 We conclude that an arcade which may be enclosed, but is
monitored by video camera, does not substantially comply with the
ordinance, which requires a direct line of sight. To the extent that they
do not encompass a First Amendment challenge of the ordinance,
appellant's fourth and fifth issues are overruled. 

 Appellant contends, in its sixth issue, that there is a fact issue
regarding whether the ordinance violates its rights under the First
Amendment because the predominant purpose of the ordinance was to
target the viewing of adult movies in arcades, which is protected
speech under the First Amendment. By its seventh issue, appellant
asserts the trial court erred in granting summary judgment because its
argument that the ordinance violated the First Amendment was not
barred by res judicata. 

 As appellee notes in its brief, and as it explained in its motion for
summary judgment, the constitutionality of section 28-101 of the
ordinance under the First Amendment was litigated in N.W. Enterprises,
Inc. v. City of Houston, 27 F.Supp.2d 754, 768 n.11 (S.D. Tex. 1998). 
In that case, a federal district court held that the structural, visibility,
and lighting requirements in sections 28-101 and 128-103 were
content-neutral and required intermediate level scrutiny. Id. at 827. 
The court concluded that the restrictions were narrowly tailored to serve
the substantial governmental interest in decreasing public lewdness
and prostitution inside sexually oriented businesses. Id. Thus, the
court concluded these sections were facially valid under the First
Amendment. Id. 

 Res judicata operates to prevent relitigation of claims that have
been finally adjudicated, or could have been raised with proper diligence
in the course of previous litigation, that terminated in final judgment,
over the same subject matter. Barr v. Resolution Trust Corp., 837
S.W.2d 627, 628 (Tex.1992). When the first lawsuit at issue is decided
in federal court, federal law controls the determination of whether res
judicata bars the present state court proceeding. San Antonio Ind. Sch.
Dist. v. McKinney, 936 S.W.2d 279, 281 (Tex. 1996); Eagle Properties,
Ltd. v. Scharbauer, 807 S.W.2d 714, 718 (Tex. 1990). Under federal
law, res judicata will apply if the parties are identical in both suits, the
prior judgment is rendered by a court of competent jurisdiction, there
is a final judgment on the merits, and the same cause of action is
involved in both cases. Russell v. SunAmerica Securities, Inc., 962 F.2d
1169, 1172 (5th Cir.1992); Eagle Properties, Ltd., 807 S.W.2d at 718. 
Because appellee raised res judicata as an affirmative defense at the
summary judgment stage, it bore the burden of proving each of these
elements conclusively. See Johnson & Johnson Medical, Inc. v.
Sanchez, 924 S.W.2d 925, 927 (Tex. 1996). 

 Appellant was one of a multitude of plaintiffs in the federal suit
against the City involving ordinance 97-75. See N.W. Enterprises, Inc.,
27 F.Supp.2d at 768 n.11. Thus, the parties are identical in both suits. 
Next, the judgment was rendered by a court of competent jurisdiction. 
Appellees attached appellant's petition from the suit in federal court in
which appellant admits the court has subject matter jurisdiction
pursuant to 28 U.S.C. § 1331. The federal district court granted a
partial summary judgment, concluding sections 28-101 and 28-103
were constitutional, by a written memorandum opinion. The opinion
was eventually reduced to a final judgment. Thus, there was a final
judgment on the merits.

 Finally, we must consider whether the same cause of action was
involved in the federal district court as in the present suit. In both
cases, appellant challenged the constitutionality of the ordinance,
arguing the ordinance targeted speech protected under the First
Amendment. The court concluded the restrictions were content
neutral, and that the requirements were facially valid under the First
Amendment. Having previously litigated this claim in federal court, the
doctrine of res judicata precludes appellant from raising it again.(6) 
Appellant's sixth and seventh issues are overruled.

 We now return to appellant's fifth issue, in which it complains
there is a fact issue regarding whether the ordinance was narrowly
tailored to protect the City's interest in accordance with the First
Amendment. This is an applied challenge in which appellant contends
that because video surveillance is a method superior to the naked eye
in monitoring arcades, an ordinance which requires a direct line of sight
and precludes the use of video surveillance in enclosed booths is not
narrowly tailored to further the City's interest. 

 Appellant urges that the ordinance is unconstitutional under
United States v. O'Brien, 391 U.S. 367 (1968). In O'Brien, the Supreme
Court announced that a governmental regulation does not infringe upon
First Amendment rights if: (1) the regulation is within the constitutional
power of the government; (2) it furthers an important or substantial
governmental interest; (3) the interest furthered is unrelated to the
suppression of free expression; and (4) "the incidental restriction on
alleged First Amendment freedoms is no greater than is essential to the
furtherance of that interest." Id. at 377; see City of Dallas v. MD II
Entertainment, Inc., 974 S.W.2d 411, 413 (Tex. App.­Dallas 1998, no
writ). The O'Brien test does not require the government to use the
"least intrusive means" of regulation. Ward v. Rock Against Racism,
491 U.S. 781, 798 (1989). "So long as the means chosen are not
substantially broader than necessary to achieve the government's
interest, . . . the regulation will not be invalid simply because a court
concludes that the government's interest could be adequately served by
some less-speech-restrictive alternative." Id. at 800. 

 Appellant's challenge is limited to the fourth O'Brien factor. That
is, appellant contends the restriction on First Amendment speech is
greater than necessary to further the City's interest. We conclude the
ordinance, by requiring a direct line of sight from the manager's station
into arcades, does not place a restriction on First Amendment speech
greater than that which is essential to the furtherance of the City's
interest.

 A city has a substantial interest in regulating sexually oriented
businesses. Adult Video v. Nueces County, 996 S.W.2d 245, 253 (Tex.
App.­Corpus Christi 1999, no pet.) (citing City of Renton v. Playtime
Theatres, Inc., 475 U.S. 41 (1986)). Requiring a direct line of sight from
the manager's station into arcades, which necessarily prohibits
enclosed arcades, regardless of video surveillance, places little, if any,
restriction on First Amendment speech. The restriction does not affect
appellant's ability to show videos in the arcades nor its patrons' right to
view them. See id. The restriction limits itself to visibility of patrons;
it does not limit who may access the arcades, the content of the films
shown in the arcades, the number of films shown, nor the hours during
which the films are shown. The means chosen are not substantially
broader than necessary to achieve the government's interest. 
Appellant's First Amendment challenge in issue five is overruled. 

 In its first issue, appellant contends the trial court's granting of
summary judgment was improper because the City's notice that it was
denying appellant's application for the permit did not comply with the
specificity requirements of the ordinance. Section 28-93(d) of the
ordinance provides, in relevant part, "[i]f a permit is denied, then a
notice thereof setting forth the specific reasons therefor shall be given
to the applicant and the owners." Houston, Tex., Municipal Code, Ord.
97-75, § 28-93(d). In denying the permit, the City sent appellant a letter
stating the following reasons for denial:

 (1) Your adult arcade is in violation of Section 28-93(b)(1) of the Adult Arcade/Adult Mini-Theater
Ordinance having to do with the view, design,
and lighting requirements.


 (2) The application that you submitted is in
violation of Section 29-92(c).


 Appellant contends, without citing any authority, that this notice
does not satisfy the specificity requirement of the ordinance. According
to appellant, this notice was insufficient to apprise it of any infirmities
it would have to defend against. An appellant has the burden to bring
forth sufficient record and authority to support reversible error. Tex. R.
App. P. 38.1(h); Pierce v. First Nat. Bank of Alvin, 899 S.W.2d 365, 371
(Tex. App.--Houston [14th Dist.] 1995, no writ). A point of error not
supported by authority is waived. Trenholm v. Ratcliff, 646 S.W.2d
927, 934 (Tex. 1983); Melendez v. Exxon Corp., 998 S.W.2d 266, 280
(Tex. App.--Houston [14th Dist.] 1999, no pet.). Even if appellant had
provided authority in support of its argument, its own letter of appeal
belies its argument that it did not have notice. By appellant's letter of
appeal dated July 23, 1998, it admitted that an officer of the Houston
Police Department "orally confirmed that the 'view' and 'design'
infirmities alleged[ly] relate to the installation of video cameras which
allegedly fail to comply with the 'direct line of sight' provisions within
Section 28-101 of the Ordinance. . . . [The officer] confirmed that [the
violation of section 28-99] also relates to the alleged 'line of sight'
violation." Thus, appellant had actual notice of the reasons for the
denial of the permit prior to the hearing of August 19, 1998. Appellant
has failed to show that the notice given did not comply with the
specificity requirements of the ordinance, and that he lacked adequate
notice to prepare a defense of the denial of the permit. Appellant's first
issue is overruled. 

 By its second issue, appellant contends the trial court erred in
granting summary judgment because the hearing officer erroneously
held a second hearing on the appeal of the denial of the permit in
contravention of the ordinance. According to appellant, the hearing
officer lacked jurisdiction to conduct a reconsideration of his initial ruling
because the ordinance only provides for a single hearing. Section 28-99
of the ordinance governs appeals and provides that an applicant shall
be entitled to a hearing. The ordinance refers to a hearing throughout
in the singular. From this, appellant infers that the ordinance prohibits
a second hearing or rehearing.

 The granting of a rehearing by an administrative agency(7) is a
discretionary matter. Texas State Bd. of Dental Examiners v. Silagi,766
S.W.2d 280, 285 (Tex. App.--El Paso 1989, writ denied) (citing Braswell
Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98, 103 (W.D.
Tex. 1967), aff'd, 389 U.S. 569 (1968)). Until an agency issues an
effective final order, the agency retains jurisdiction over the matter and
can withdraw previous orders and issue new ones. Star Houston, Inc.
v. Texas Dept. of Transp., Motor Vehicle Div., 957 S.W.2d 102, 106
(Tex. App.--Austin 1997, writ denied); Lone Star Greyhound Park v.
Texas Racing Comm'n, 863 S.W.2d 742, 745-46 (Tex. App.--Austin
1993, writ denied). 

 In this case, when the trial court held the rehearing, it had not
issued a written order as required by section 28-114. We conclude the
hearing officer retained jurisdiction over the permit dispute to hold a
rehearing. The hearing officer did not abuse its discretion in holding a
rehearing. Appellant's second issue is overruled. 

 Appellant argues, by its third issue, that the trial court erred in
granting summary judgment because, to the extent the ordinance
confers an implied right to conduct a second hearing on the denial of a
permit, it violates the First Amendment to the United States
Constitution by failing to provide time restraints on such additional
hearings and orders. Appellant contends that if the ordinance permits
the hearing officer to conduct reconsideration hearings, then it is
unconstitutional on its face for failing to provide explicit time parameters
within which a decision on the reconsideration must be rendered. 
Appellant cites FW/PBS v. City of Dallas, 493 U.S. 215 (1990), in
furtherance of this argument. 

 In FW/PBS, the Supreme Court struck down a Dallas sexually
oriented business ordinance as a prior restraint on the First
Amendment, when it failed to provide a definite time limit for issuance
of a license. Id. at 226-27. The Court held that two safeguards are
essential for ordinances governing the issuance of licenses for First
Amendment protected businesses: (1) "the licensor must make the
decision whether to issue the license within a specified and reasonable
time period during which the status quo is maintained, and [(2)] there
must be the possibility of prompt judicial review in the event that the
license is erroneously denied." Id. at 228. 

 The ordinance in this case requires the chief of police to issue or
deny a permit within twenty days of receipt of an application.(8) 
Houston, Tex., Municipal Code, Ord. 97-75, § 28-93. Thus, the Houston
ordinance, unlike the Dallas ordinance in FW/PBS, provides a definite
and reasonable time limit for issuance of a license. 

 Appellant contends there is no possibility for prompt judicial
review as required by FW/PBS if a hearing officer may conduct
unlimited rehearings. The ordinance requires the hearing officer to
render a written decision within five days of the conclusion of the
hearing. Houston, Tex., Municipal Code, Ord. 97-75, § 28-125(e). In the
event that the hearing official does not give timely notice of his decision,
the applicant is entitled to a temporary permit upon written demand,
which is valid until the third day after the hearing official gives notice of
his decision on the appeal. Houston, Tex., Municipal Code, Ord. 97-75,
§ 28-125(f). Thus, if the hearing officer fails to issue a written order
within five days of the hearing because of a motion for rehearing or
reconsideration, the applicant is entitled to a temporary permit upon
written demand. We conclude the ordinance provides prompt judicial
review as required by FW/PBS and is not a prior restraint on First
Amendment speech. Appellant's third issue is overruled.

 The summary judgment is AFFIRMED.

 

 NELDA V. RODRIGUEZ

 Justice


Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this the 19th day of October, 2000.

.

 

1. "Adult arcades" are establishments containing "coin- or slug-
operated or electronically or mechanically controlled machine[s] or
device[s]" that dispense adult entertainment intended for viewing by
five or fewer persons. Houston, Tex., Municipal Code, Ord. 97-75, § 28-81.
2. Section 28-93(b)(1) of the ordinance authorizes the denial of
permits when adult arcades or adult mini-theatres do not comply with
division 3 of the article. Division 3 includes sections 28-101 (view from
the manager's station), 28-102 (wall penetrations), and 28-1023
(lighting). 
3. Section 28-92(c) requires applicants to submit a diagram of the
arcade or mini-theatre. 
4. The hearing officer is an official who is appointed by the mayor
and confirmed by the city council. Houston, Tex., Municipal Code, Ord.
97-75, § 28-113.
5. Appellant also contends, alternatively, if appellant was not in
substantial compliance with the ordinance, the ordinance infringed
upon appellant's First Amendment rights because it was not narrowly
tailored to protect the City's interest. For convenience, we shall address
this argument after considering appellant's sixth and seventh issues. 
 
6. We note that appellant's applied challenge of the ordinance under
the First Amendment, dealing with whether the ordinance was
overbroad in precluding the use of video cameras to monitor arcades,
has not been litigated and may be reviewed on its merits. 
7. An administrative agency is "[a] governmental body charged with
administering and implementing particular legislation." Black's Law
Dictionary 29 (6th ed. 1990). In the present case, the Houston City
Council has authorized a hearing officer to consider appeals from the
denial of permits. See Houston, Tex., Municipal Code, Ord. 97-75, §§ 28-113, 28-114, 28-135. 
8. The ordinance allows that the notice of issuance or denial of the
permit may be extended until the thirtieth day after receipt of the
application if "the police chief upon notice to the applicant that the
police chief has been unable, after diligent effort, to schedule the
conduct of any required inspections of the adult arcade or adult min-theatre with the liaison person designated therefor in the application by
the nineteenth day next following the date of his receipt of the
application." Houston, Tex., Municipal Code, Ord. 97-75, § 28-93.